STATE OF IOWA, Appellee, v. BEN SLOAN, Appellant.

Criminal law:  MURDER: SELF DEFENSE: SUBMISSION OF ISSUE.  Where the defendant accused of murder testified that he was assaulted by deceased the question of self defense was involved so as to justify an instruction upon that subject; and where the instruction upon that subject, as in this case, was submitted for consideration only in the event that the jury first found that defendant killed deceased its submission was not prejudicial error although defendant denied the killing.

**Same:** CIRCUMSTANTIAL EVIDENCE: INSTRUCTIONS. Where there is direct evidence connecting defendant with the commission of a crime failure to specifically instruct on the question of circumstantial evidence is not erroneous; especially where there was no request for further instructions on that subject.

**Same:** EVIDENCE. The manner in which a statement is made is often indicative of the meaning to be conveyed by the speaker, and such intended meaning may be the very reverse of the meaning of words actually used; so that where the manner of making the statement is essential to its meaning it is proper for a witness to describe it; and a party can not keep the benefit of such a statement and at the same time reject the characterization by the witness as to the manner in which it was made.

**Same:** EVIDENCE OF IDENTITY: PREJUDICE. Evidence as to the identity of defendant in this case, while technically neither material nor competent, is held to have been without prejudice in view of the fact that defendant himself conceded the question of his identity.

**Same:** INSTRUCTION: PRESENTATION OF DEFENDANT'S THEORY. Where, as on this prosecution, the defendant testified that deceased was killed by an accidental fall from a moving train, refusal to instruct specifically on that subject was not erroneous, as that question inhered in the case as presented to the jury by the instructions given.

**Same:** EVIDENCE. The evidence in this prosecution is held to support a conviction for manslaughter.

*Appeal from Pottawattamie District Court.*—HON. E. B. WOODRUFF, Judge.

TUESDAY, DECEMBER 13, 1910.

INDICTMENT for murder. There was a verdict of guilty of manslaughter and judgment entered accordingly. Defendant appeals.—*Affirmed.*

*Thomas Q. Harrison* and *John P. Organ,* for appellant.

*H. W. Byers,* Attorney General, and *Charles W. Lyon,* Assistant Attorney General, for the State.

EVANS, J.—The defendant was indicted for the alleged murder of one Wallace. On May 22, 1909, the defendant and Wallace and one Payette boarded a train of the Northwestern Railroad Company at Omaha or Council Bluffs for the purpose of stealing a ride to Missouri Valley or farther. They first took a position between the baggage car and the tender. Wallace and Payette were strangers to the defendant. The train left Council Bluffs at 7:10 p. m. Within a few minutes after the train had left Council Bluffs, the defendant and Wallace got into some altercation which resulted in a fight between them. They were then on the tender and on top of the coal. The attention of the fireman was directed in their direction, and he went back to where they were. The defendant had Wallace down on his back and was pounding him. Wallace was covered with blood and was then quite helpless. The fireman caused the defendant to desist momentarily. Wallace tried to rise, but could not. He tried to talk, but the fireman was unable to understand anything he said except the one remark, "Put that fellow off the train." While the fireman was present, the defendant struck Wallace again and threatened to throw him off the train. He also picked up a shovel, but laid it down upon the demand of the fireman. The fireman returned to his cab. Within a few moments the defendant came also to the cab and was ordered away by the engineer. A few moments later Payette appeared. Just what information was given to the engineer by Payette does not appear in the record, but the train was immediately stopped. Wallace was missing from the train. The defendant hurriedly left the train and was pursued by the fireman and brakeman. He was put under arrest and taken to Missouri Valley. The trainmen were unable to find Wallace that night, although they backed the train down the track for some distance. His body was found alongside of the track the next morning. When the fireman interfered in the altercation between the defendant

and Wallace, the train was about a mile and a half south of Crescent, the first station out of Council Bluffs. The body of Wallace was found at a point three-quarters of a mile south of Crescent. There was no stop at the Crescent station, and the point at which the train finally stopped was two miles or more north of Crescent. At the time the fireman saw the altercation on the coal tender, the train was running forty or fifty miles an hour. An examination of the body of Wallace disclosed many hurts, including a crushing of the skull. That Wallace disappeared from the train almost immediately after the fireman left him is indicated by the short distance between the point at which the body was found and the place where the fireman first went upon the tender, when considered in the light of the speed of the train. The foregoing is a general outline of the evidence and is sufficient for the present for us to proceed to a consideration of the errors relied upon for a reversal.

1. The defendant complains in that the trial court submitted to the jury the question of self-defense. It is argued that there was no claim on the part of the defend-

1. CRIMINAL LAW: murder: self defense: submission of issue.

ant that the death of Wallace occurred while the defendant was exercising any right of self-defense, and that the instruction was therefore misleading. The evidence in the case was clearly such as to require the court to direct the attention of the jury to the consideration of the question of self-defense. We have already referred to the testimony of the fireman. The defendant himself testified that Wallace assaulted him and struck him. The following is a part of his testimony: "I had one foot on the ladder when he struck me the second time. I was hanging on with my left hand and held my hands just like that, with my right. I didn't move a step. When this man struck at me the second time, I knocked his lick off and whipped at him at the same time. I licked with my left on the nose

and with my right I kept right on going up this ladder, and then I struck at him again. I didn't hit him over three or four times. I jumped on top of the tender, closed up the ladder to get away from him, and he came up over the tender and pounded at me, and I got him down on the tender. I didn't hit the man any more at all. The fireman came over and stopped me. He told me to stop and I did." True, the defendant did not admit that he killed Wallace, nor did he admit that he threw him off the train; but the evidence on the part of the state was sufficient to warrant the jury in finding that he did kill him either by pounding him to death while on the train or by disabling him and throwing him off the train whereby he was killed. The above quotation from defendant's testimony is his answer to the testimony of the state tending to show his guilt. One Mrs. Whistler also testified that she was at a certain park when the train went by and saw two men fighting, and that one of them fell. The question of self-defense was, therefore, clearly involved. No complaint is made as to the correctness of the instructions on that question in the abstract.

It is manifest also that such instructions could not be deemed prejudicial to the defendant. By the instructions such question was submitted to the consideration of the jury only in the event that it should first find from the evidence "that the defendant did kill the said James Wallace." If, therefore, the jury should find from the evidence that the defendant did kill the said Wallace, it was manifestly advantageous to him that the attention of the jury should be directed to the question whether he might not have done so in self-defense. By the instructions the burden was laid upon the state to prove not only the killing, but to prove also that it was not done in self-defense. There was no error at this point. *State v. Partipilo,* 139 Iowa, 474.

II. It is next urged that the conviction of the de-

fendant rested wholly upon circumstantial evidence, and that the court failed to fully instruct as to the rules governing proof by that form of evidence. This contention is also without merit. The conviction of the defendant did not by any means rest wholly upon circumstantial evidence. That it rested to some extent upon circumstantial evidence is true. There are few cases which do not involve circumstantial evidence to some extent. Direct evidence connected the defendant with the alleged offense in a very conclusive way. No request for additional instructions at that point was made by defendant's counsel. We have heretofore held that the failure of the court, under such circumstances, to instruct more fully on the question, is not ground for complaint. *State v. Bartlett,* 128 Iowa, 518; *State v. Judd,* 132 Iowa, 296.

2. SAME: circumstantial evidence: instructions.

III. Payette was not a witness upon the trial. Brakeman Peterson was permitted to testify to a conversation between himself and Payette and the defendant. Peterson testified that Payette said to the witness in the presence of the defendant: "This man threw the other man off, or knocked him off the train. Q. What did this man say about that? A. He did not say anything right then. In about a minute afterwards he says to Payette, 'I did not knock him off,' and Payette says, 'No, I guess not,' in a kind of joking way." Thereupon defendant's counsel moved to strike the words "kind of a joking way" as incompetent, immaterial, and irrelevant. The motion was overruled. Complaint is now made of such ruling. We are impressed that the reply of Payette, "No, I guess not," was immaterial and perhaps incompetent. No objection, however, was made to it, nor did the motion strike at it. The full answer of the witness came into the record without objection. The motion to strike was directed only to the words "in a joking way." These words were clearly explanatory of Payette's alleged answer, "No, I

3. SAME: evidence.

guess not." The defendant was not entitled to keep the answer of Payette and eliminate the manner in which it was said. It is well known that the manner in which a statement is made is often indicative of the meaning intended to be conveyed by the speaker, and such intended meaning may be the very reverse of the meaning of the words actually used. In this way sarcasm or disbelief is often expressed. Such manner can only be described by a witness in an imperfect way and in some such way as the words complained of at this point. We think that, where the manner of the saying is essential to ascertain the meaning of what was said, it is proper for a witness to describe it. This was such a case, and there was no error in allowing the explanatory words to stand. See Encyclopedia of Evidence, vol. 5, pages 702, 705; *Reeves v. State*, 96 Ala. 33 (11 South. 296).

IV. When the train was stopped, some inquiries were made by the different trainmen of each other as to the cause of the stop. The witness Sorrel testified that he said to the brakeman: "The man that we want is going up there. I think we ought to get him." This had reference to the defendant, who was hurrying away from the scene, and who was later overtaken and put under arrest, as already explained. Defendant's counsel moved to strike this testimony and now complain because their motion was overruled. Technically the evidence was neither competent nor material. But it was wholly without prejudice to the defendant. If the defendant's identity were in doubt as being the person who had been on the train with Wallace, it might have furnished some ground of complaint. But his identity in that respect is conceded by himself. Counsel do not attempt to point out to us in what respect the testimony could be prejudicial to the defendant.

4. SAME: evidence of identity: prejudice.

V. It is next urged that the court wholly ignored the defendant's theory that Wallace was killed by falling

accidentally from the tender. It is said that this was the
defendant's theory, and that it should have
been submitted as such. The defendant
testified directly that Wallace did fall acci-
dentally from the train, and that he himself
was not within twelve feet of him at the time. If the
jury believed this testimony, they could not have found the
defendant guilty under the instructions of the court. The
question whether death was caused by an accidental fall
was one which necessarily inhered in the case as presented
to the jury by the instructions of the court. Under these
instructions, the jury must have found beyond reasonable
doubt that the death was not caused by an accidental fall.
Instructions can not be unduly specific as to the various
features of the evidence. Nor did the defendant ask that
the instructions be made more specific in this respect.

*5. SAME: in-structions: presentation of defend-ant's theory.*

Lastly, it is argued that the verdict is contrary to the
evidence. This contention can not be sustained. The ver-
dict of guilty was for "manslaughter" only. We think the
evidence strongly supports the verdict. It
is manifest from the whole record that the
defendant was ably defended, and that he had a fair trial.
We find nothing in the record which entitles him to a
reversal.

*6. SAME: evi-dence.*

The judgment of the trial court is therefore *affirmed.*