By the Court.
The plaintiff in error, Frank P. Graham, was indicted and tried for murder in the second degree and found guilty of manslaughter.- Briefly stated the facts attending the alleged homicide are as follows: Graham and other guards had been employed by a manufacturing company for the protection of their plant and premises. While thus engaged a crowd composed of boys and men gathered in the vicinity of the plant, and according to the evidence produced by the defense marched about its environs in a threatening attitude. The evidence is very conflicting as to the circumstances attending the killing. The evidence of the state tended to prove the assault was unprovoked, while that of the defense purported to show that the alleged mob was making a criminal assault upon the gúards and on *78 the premises of the company when the decedent, Albert Latona, Jr., was killed. The state’s case was predicated upon the fact that Latona was killed by a weapon discharged by Graham himself, or by one of the other guards whom Graham was then aiding and abetting in a criminal act; and, furthermore, that a conspiracy to make an unlawful criminal assault existed between Graham and his associates.
The errors mainly relied upon in this court are that the court erred in its instructions upon the trial, and that the state’s counsel was guilty of misconduct..
In the course of its general charge, the court, after stating to the jury that if they found that the defendant and his associates were employed in guarding the buildings and property of the company and that the crowd of men and boys was making the attack upon them with deadly weapons, instructed the jury that the defendant had a right to defend himself from such attacks and to employ sufficient force to repel them. And, immediately following, the court used this language: “If you find by a preponderance of the evidence that the defendant in the careful and proper use of his faculties, believed in good faith that he was in imminent danger of death or great bodily harm, and that his only means of escape consisted in taking the life of his assailants, and that, under the circumstances he had reasonable grounds for such belief, then you would be warranted in finding that the killing was justifiable on the grounds of self-defense although in fact the defendant may *79 have been mistaken as to the existence or imminence of danger.”
This charge is now assailed upon the claim that under the circumstances detailed the court has in effect charged that it was the duty of the defendant to retreat. In the main it embodied the substance of the law declared in Marts v. State, 26 Ohio St., 162. It is to be regretted that the court did not elucidate this portion of the charge by the statement that the means. of escape referred to related to the escape from the impending danger, as clearly evidenced in the syllabus of the cited case. However, we do not think the charge as given is so prejudicial as to require a reversal, especially in view of the latter portion of the charge quoted, and in the absence of a request by the defendant to make such charge more specific. Under the facts detailed, if the defendant did not provoke the assault, but while in the lawful pursuit of his business was suddenly and violently assaulted with a deadly weapon and placed in danger of loss of life or great bodily harm, under the current of modern authority he was not required to retreat. Ruling Case Law, 826; Erwin v. State, 29 Ohio St., 186; Beard v. United States, 158 U. S., 550; State v. Gardner, 2 L. R. A., N. S., 60; Eversole v. Commonwealth, 95 Ky., 623, and Hammond v. People, 199 Ill., 173.
The claim is further made that the court erred in charging the jury that the defendant might be convicted if they found that a criminal assault was made by the defendant on “some person whom *80 the defendant was then and there aiding, abetting and assisting.”
This charge is said to be misleading because of undisputed evidence that Graham was assisting his associate guards in a lawful enterprise, and that from the language employed the jury might infer that his aiding, abetting and assisting therein would make him criminally liable. The language of the court was unfortunate in that it did not state that the aiding, abetting and assisting related to the criminal act. However, in view of other portions of the general charge, especially the state’s request Number 5, we do not think the jury could have been misled; for the reason that therein it is clear that the assisting, aiding and abetting related only to the criminal act, and not to the lawful purpose of assisting his associates in guarding the plant.
The court charged the eighth proposition of the syllabus of the case of Goins v. State, 46 Ohio St., 458, detailing under what circumstances a defendant could be found guilty if he did some overt act producing the homicide. In the case at bar the evidence adduced by the state tended to prove that the defendant and one or more of the guards were at the time acting in concert in driving back the alleged mob. If this evidence were true, the jury might have found, under the facts detailed, that an overt act was committed by the defendant'in actively aiding his associate or associates there present in making a criminal assault which resulted in the death of Latona. The legal principle involved in the charge is correct, and the only question that arises upon the record is whether such *81 charge should have been given in view of the testimony disclosed. While the testimony relating to the overt act on the part of Graham is not very strong, we are unable to say in this case that the charge was prejudicial.
In its general charge to the jury the .court gave the defendant the benefit of the law relating to self-defense. It is now claimed that in this the court erred for the reason that the defendant denied the act of firing the shot that killed Latona. It is therefore claimed that the injection of the question of self-defense impliedly admitted that the defendant may have fired the shot that killed the decedent, and was therefore prejudicial error. While it is true the defendant denied the killing, several of the state’s witnesses gave testimony lending to show that he fired the shots that killed the decedent. It also appears, both from the cross-examination of the state’s witnesses and from the defendant’s witnesses, that whatever was done by Graham and his associates on that occasion was done in the lawful defense of their persons. Under that phase of the case, it became the duty of the court to charge the right of self-defense. When the defendant entered his plea of not guilty, he could avail himself of all the defenses which the evidence disclosed. It would be perfectly proper for him to say (a) I did not fire the shot; (b) Whatever I did, I did in my own self-defense. The mere fact that defendant does not admit the killing does not preclude him from this right. Indeed, the defendant may not take the stand at all or offer any evidence in defense. The evidence of self-
*82 defense may come wholly from the state; but whether the evidence comes from the defense, or from the state supporting his lawful right of self-defense, it is the duy of the court to charge that feature of the law. The rule is stated as follows in 13 Ruling Case Law, page 813: “If the defendant denies the killing and there is no evidence adduced by either party which tends to show that the killing might have been in self-defense, although other evidence shows quite conclusively that the defendant committed the crime, it is not the duty of the court to instruct as to self-defense; but if the evidence tends to raise the issue of self-defense although the defendant denies the killing, it seems that an instruction based on the theory of self-defense is proper and should be given.” That the ihstruction relating to self-defense was properly given is supported by the overwhelming weight of authority. State v. Jackett, 81 Kans., 168; Frazier v. Commonwealth, 114 S. W. Rep., 268, and State v. Sloan, 149 Ia., 469.
Misconduct of counsel for the state on the trial is also urged as reversible error. The record discloses that these remarks were exceedingly censurable, and of such character that their effect could hardly be avoided by any exception, that might have been taken at the time. But the bill of exceptions does not disclose that the misconduct was excepted to on the trial, but was brought into the case only by affidavit attached to the motion for a new trial. This affidavit was made a part -of the bill of exceptions. The procedure took the same character as in the case of State v. Young, *83 77 Ohio St., 529, which holds that erroneous misconduct of this character cannot be made available by affidavit in support of a motion for a new trial.

Judgment affirmed.

Newman, Jones, Matthias and Johnson, JJ., concur.
Wanamaker, J., concurs in the judgment.