STATE OF IOWA, Appellee, v. TOM CLAY, Appellant.

**HOMICIDE:** Self-defense—Provoking Encounter. One who provokes an
1    encounter may not plead self-defense in a resulting homicide. (See
      Book of Anno., Vol. 1, Sec. 12922, Anno. 138 *et seq.*)

**CRIMINAL LAW:** New Trial—Misconduct of County Attorney—Indef-
2    inite Record. New trial because of misconduct of the county attor-
      ney in argument cannot be granted on a materially indefinite record.

Headnote 1: 30 C. J. p. 45. Headnote 2: 17 C. J. p. 170.

Headnote 1: 45 L. R. A. 687; 13 R. C. L. 831. Headnote 2: 2 R. C.
L. 441.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

NOVEMBER 23, 1926.

The defendant was by indictment charged with manslaughter. From a judgment upon a verdict of guilty he appeals.— *Affirmed*.

*Charles P. Howard,* for appellant.

*Ben J. Gibson,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

VERMILION, J.—I. The chief contention of appellant is that the verdict is not supported by the evidence; that the evidence shows that the killing was in self-defense.

The killing occurred on September 6, 1925, after a drinking party at the house of the deceased, Albert Johnson, which was attended by the appellant, the deceased, the latter's wife, and two other men from Nevada. The drinking had continued for several hours, and the killing occurred between 7 and 8 o'clock in the evening. The deceased and the appellant had some difficulty over the conduct of one of the other men. The two men from Nevada left. The testimony of decedent's wife was that Johnson and appellant were still quarreling; that she tried to get them to quit, and told appellant to go home. She denied that deceased then had an ax in his hands. She testified that the appellant got into his wagon and left; that in a short time he. came back; that she and her husband were sitting on the back porch, and she went to the front door to shut the screen; that, as she had her hand on the screen, she heard a shot and ''seen the sprangles from the gun;'' that her husband came into the house, and said he was shot, and appellant came in and hit him over the head with his gun, saying that, if he was not dead, he would kill him. She testified that she did not remember hearing more than one shot.

*1. HOMICIDE: self-defense: provoking encounter.*

A witness who was 75 feet away at the time of the shooting testified:

. ''I saw the spurt of flame. · I got one of them going west, but they was both together. I see the reflection and heard the two. Well, the flashes apparently would run together. They seemed to be pretty near in the same place to the eye.''

There was testimony from a young woman who, with two companions, was passing decedent's house that a man who she said looked like the defendant came running up, asking for the deceased; that he had a gun; that she ran, and heard one shot in the direction from which she came.

The appellant testified that, as he got into his wagon, he heard deceased's wife say, ''Don't do that,'' and that the deceased stood with an ax over his (appellant's) head; that she got the ax from deceased, who went back in the house. He testified:

. ''I got upon the wagon and started by the east door, and I heard him a-running. I jumped off the wagon, letting the horse go, and ran back around in the darkness of the door where the wagon was, and he ran out and crouched off from the porch and

shot right at me, when I shot. I just up with the gun right at him and shot, the same as he did.''

He testified that he carried his gun in his wagon.

The appellant was arrested the following morning, and was then carrying two revolvers, each with one exploded shell. He testified that one of the guns was his, and that the other he had picked up where deceased had dropped it.

There was no testimony, except that of the appellant, that one of the guns found in his possession belonged to the deceased, and there was a conflict in the evidence as to whether more than one shot was fired. There was but one wound in the body of deceased, and its location indicated that decedent's right arm was raised when the wound was received.

The jury may well have found from the evidence that the appellant, after he had left, returned to the scene of the former trouble, armed, and in search of the deceased, and with the intention of provoking a difficulty with him. It is well settled that he could not claim to have acted in self-defense in a difficulty so brought on by him. *State v. Murdy,* 81 Iowa 603; *State v. McCaskill,* 160 Iowa 554.

We think there was evidence to sustain the verdict, and that it was a question for the jury whether the killing was in self-defense. There is no criticism of the instructions.

II. It is claimed that the assistant county attorney was guilty of prejudicial misconduct in his argument to the jury. The record before us does not disclose what, in fact, the attorney for the State had said, but only the respective claims of himself and the attorney for appellant as to what he had said. Whatever it was, is conceded, both in the objections made below and in argument here, to have been in reply to something said by the attorney for the appellant. What it was in reply to, or whether it was a legitimate reply, cannot be determined on the record before us. No prejudicial misconduct is shown. *State v. Walker,* 200 Iowa 341.

2. CRIMINAL LAW: new trial: misconduct of county attorney: indefinite record.

III. There is some claim that there was error in giving an additional instruction. The instruction is not set out. It appears to have been given at the suggestion of the State, and before the jury had retired to consider the case. No error appears.

We have examined all the questions presented by appellant in argument, and find no error in the record. The judgment is —*Affirmed*.

DE GRAFF, C. J., and STEVENS and FAVILLE, JJ., concur.