STATE OF IOWA, Appellee, v. HARRY SHEARER, Appellant.

June 26, 1928.

*F. E. Northup* and *R. L. Bryant*, for appellant.

*John Fletcher*, Attorney-general, for appellee.

WAGNER, J.—On the evening of May 17, 1924, one George Stewart purchased a new Ford touring car at Grinnell. On account of the lateness of the hour, he did not procure a license for it, but took it to his home in Gilman, and a dealer's card was fastened on the wind shield. On the afternoon of the following day, he drove the car to Marshalltown, and went to a ball game at the fairgrounds, where he parked his car along with a lot of other automobiles. At the close of the game, his car was gone. The defendant and his cousin, Jesse Arnold, were both indicted for the theft of the automobile. Arnold has been previously tried, but the result of the trial is not shown by the record.

The defendant was engaged in the dray business in the city of Marshalltown. Arnold had been in said city for about a week, staying at the home of Shearer's parents. During his stay there, Arnold and the defendant occupied the same room. The defendant and Arnold were each the owner of an old Ford car.

The defendant testified that, on the Sunday in question, Arnold did not eat the noonday meal at the Shearer home; that, in the afternoon, he started in his car for the ball game, and on the way, saw Arnold, who stopped him, and got in his car, asking him as to where he was going; that, upon being told by the defendant that he was going to the ball game, Arnold asked, "Won't you drive a car for me?" that he told Arnold he would

rather-see the ball game, and was informed by Arnold that it was too late for the ball game,—that it had started; that Arnold said he had got a car, and wanted him to drive it over to Colo, and that he (the defendant) didn't know where Arnold got the car; that he did not know which car it was, before they got to the fairgrounds; that he informed Arnold that he would drive the car; that they then went to the fairgrounds, and he parked his car about 60 feet from a car occupied by a lady; that he and Arnold alighted from the car driven by defendant, and they walked to the place of the location of the new Ford car, and that he raised the hood; that Arnold had told him, on the way to the fairgrounds, that he was not able to start the car; that, after raising the hood, he took a pair of pliers and tightened the coils and terminals; that Arnold then got in the new car and started it, and drove it away; that he entered his own car, and left the fairgrounds, and drove to his home, parked his car; and there entered Arnold's old car, and drove it to Colo, where he stopped at Reed's oil station for about a half hour, when the phone rang, and the proprietor informed him that he was wanted at the phone; that it was Arnold, at the other end of the line, saying that he was in Colo; that he had heard Arnold speak, several different times, of his intention of getting a new car; that, when he went to the fairgrounds that afternoon with Arnold, he believed this new car was Arnold's car, and had no intention of stealing the car, or assisting Arnold in any way to steal it; that he drove Arnold's old car to Colo because Arnold requested him to; that, at the fairgrounds, he went over to the new car because Arnold had told him that he was unable to start it, and to help him in the starting of the car; that he had an arrangement with Arnold to meet him at Colo, after they left the fairgrounds.

The only eyewitness for the State to the taking of the car, was a young lady who was studying in her father's automobile, while her father was at the ball game, said automobile being in close proximity to the car which was stolen. She testified that the stolen car had no numbers on it; that she tried to get the numbers, but that it did not have any; that she saw the two boys go to the car, and while she did not know them at that time, she saw them after the arrest, and identified Arnold as the man who drove the new car away, and the defendant as the one who raised the hood of said car, and had a wire, and took a pair of

pliers from his pocket, and did some fixing about the car; and he then left the fairgrounds in the old car, the numbers of which she took, and wrote down on a piece of paper, which numbers proved to be those of the defendant's car.

The defendant and Arnold ate supper that evening at the home of Arnold's sister, Mrs. Croker, in Colo. They arrived there about 3 or 4 o'clock in the afternoon. How they came, is not shown by the record; but Mrs. Croker testified that her brother was in the house when the defendant arrived. A new Ford car was placed in the barn at the Croker home. Mrs. Croker testified, with reference thereto:

"They said they wanted to leave the car there because there wasn't room down at Marshalltown for it. I think it was Harry [the defendant] that said that. He said there wasn't room in the Shearers' garage. They had two other cars, and wanted to leave the car at my place."

The defendant and Arnold left the Croker home that evening in Arnold's car.

At supper time, Mrs. Croker's son went to the barn, where the new car and the defendant and Arnold were, to call them to supper; and he testified, in substance, that the horn was off of the car, lying on the fender, and that he saw the defendant have a file, and that the hood was raised at the time, and that he was filing something; that, after the filing, it was his belief that they put the horn back on; that he asked them where they got the car, and they said, "At Marshalltown."

On the morning of May 20th, a Ford touring car, without numbers on it, and with a screw driver lying in the back seat, was found in the road near State Center. The battery was gone, and the engine number had been defaced, and was not readable. The car was taken to State Center, and Stewart identified the car as being the one he purchased, the Saturday night previously.

Stewart testified that there was a bolt out under the dashboard in the coil box, and that, prior to his going to Marshalltown on Sunday, he put an old rusty bolt in the missing place; and he identified the car by reason thereof, and also by the screw driver, which he had marked with two crosses thereon, and

which was found in the car. It is shown by the record that the horn on the car was on the same side as the engine number.

The defendant gave bond for his appearance at the preliminary examination, but failed to appear, and his bond was forfeited. He went to Canada, and was there until he was apprehended and returned to Marshalltown, about six weeks prior to the time of his trial.

The defendant complains of an instruction based upon Section 12895 of the Code of 1924, saying therein that there is no distinction between an accessory before the fact and a principal, and that all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense or aid and abet its commission, must be indicted, tried, and punished as principals. The defendant's specific exception to said instruction is that there was no evidence upon which to submit any such proposition, and that the defendant was either guilty as a principal, or not at all. The evidence, as shown by the record, is a complete answer to this contention of the defendant's.

In another instruction, the court told the jury that the evidence shows that the defendant did not personally drive away the Ford automobile from the fairgrounds, where it was parked, and that one of the questions for them to determine is whether the defendant knew that the Ford automobile was being stolen by Arnold; and that, if they believed from the evidence that the defendant was innocent of any intention to aid in the larceny of the car, and believed that the Ford automobile belonged to Arnold, and that what the defendant was doing was merely a friendly act, and that he had no intention of aiding Arnold in a larceny, then they should return a verdict of not guilty.

It is obvious that the instructions were correct, and that the defendant has no ground of complaint at this point.

The defendant complains because the court did not give an instruction on circumstantial evidence. It will be seen from the record, which we have set out quite fully, that the evidence is not wholly circumstantial. The defendant made no request for an instruction on circumstantial evidence. We have held that, where there is direct evidence connecting a defendant with the commission of a crime, failure to specifically instruct on the

question of circumstantial evidence is not erroneous, especially where there was no request for further instructions on that subject. See *State v. Sloan*, 149 Iowa 469.

Moreover, the question was in no way raised by the exceptions to the instructions. It is true that the exceptions state that the instructions as a whole fail to cover and embody a complete and necessary statement of the law applicable to the case. This exception is general, not specific, and fatally indefinite, and raises no question for consideration on appeal. See *State v. White*, 205 Iowa 373, and cases therein cited.

It is thus manifest that the proposition now urged was not presented to the trial court. We have repeatedly refused to consider propositions which were not presented to, or passed upon by, the trial court. See *State v. Harding*, 204 Iowa 1135.

The appellant assigns as error the sustaining by the court of objections by the State to questions propounded to the appellant as a witness, relative to conversations between him and Arnold concerning Arnold's alleged ownership of the stolen car and the driving by him of Arnold's old car to Colo and meeting him there.

The record of the defendant's testimony hereinbefore set out shows that the witness was permitted to testify with reference to said conversations. In so far as the nature of the questions propounded to the defendant reveals the character of the testimony elicited, and in so far as the answers to the same would have been proper, the witness had previously given, or was subsequently permitted to give, testimony with reference thereto.

The defendant made no statement or offer as to what, if anything, in addition to the testimony given by the witness, as shown by the record, he expected to prove by the questions propounded. It is manifest that, in this state of the record, no prejudicial error is shown.

Other rulings of the court with reference to the introduction of testimony are assigned as error, but, since they are not argued by the defendant, they need no further consideration.

There is an abundance of evidence to sustain the verdict. This is sufficient answer to the defendant's contention that the evidence is insufficient.

One other matter requires our consideration. During the examination of the defendant, the following record was made:

"Q. Now, when Arnold asked you to drive the car, did he say anything about where you were to drive it to?

"Mr. Pell: Objected to, as calling for hearsay, and a self-serving declaration.

"The Court: Objection sustained. Defendant excepts.

"Q. Did Arnold tell you whose car you were to drive,— whose car he wanted you to drive?

"Mr. Pell: Same objection. Sustained. Defendant excepts.

"Q. And did he tell you where to go to with this car?

"Mr. Pell: Same objection heretofore made. Sustained. Defendant excepts.

"Q. Did he tell you, in this conversation with Arnold, as to what you were to do?

"Mr. Pell: Objected to as calling for hearsay, and a self-serving declaration. Sustained. Defendant excepts.

"The Court: Strictly speaking, is there any objection to the questions as being leading?

"Mr. Pell: It is all leading, and self-serving declarations.

"The Court: I would permit this: There were some conversations as to what he should do, and in giving the conversation now, if I permitted him to answer these questions, they would all have to be answered 'yes' or 'no;' but they are all leading. In other words, you can't manufacture a conversation with a third person and put it in as a defense. Now the fact, if it is a fact, that they had some conversation, and directions were given as to what should be done with this car, I believe that would be admissible.

"Judge Lee: We take exception to the remark of the court that you 'cannot manufacture a conversation,' as prejudicial.

"The Court: Very good."

The defendant assigns as prejudicial error the making by the court of the remark: "You can't manufacture a conversation with a third person and put it in as a defense." This remark by  the court was indeed unfortunate. We are satisfied that the court did not mean to say, or infer, that the testimony of the defendant was false. The court evidently believed that the aforesaid questions were leading, and used the

word "manufacture" in the sense that the attorney propounding the questions was doing it in such a way as to suggest to the witness the answer he desired. But, regardless of our belief as to the sense in which the court used the word "manufacture," was it error on the part of the trial court? The defendant had testified, and was thereafter permitted to testify, to conversations with Arnold, a third person, relative to the same matters inquired about in the questions hereinbefore set out. In the presence of the jury, the court said: "You can't manufacture a conversation with a third person and put it in as a defense." It is true that, in one of the instructions, he said to the jury:

"You, and not the court, are the judges of the credibility of the witnesses and the weight and value of their testimony, and of each of them."

Under our system of procedure, the court is not allowed to express himself regarding the facts. Although we are abidingly satisfied that the court did not intend to say, or infer, that the testimony of the defendant with reference to his conversations with Arnold was manufactured or false, yet the rights of the defendant must be protected and preserved. In *State v. Philpot,* 97 Iowa 365, in passing upon a similar matter, this court made the following pronouncement:

"* * * it is a matter of common knowledge that jurors hang tenaciously upon remarks made by the court during the progress of the trial, and if, perchance, they are enabled to discover the views of the court regarding the effect of a witness' testimony, or the merits of the case, they almost invariably follow them."

We there held that the remark made by the court in ruling upon an objection to the testimony was prejudicial error.

In *Edwards v. City of Cedar Rapids,* 138 Iowa 421, we made the following pronouncement:

"During the cross-examination of the physician who attended plaintiff after she had received her injuries, and in response to an objection made by plaintiff's attorney as to the character of the cross-examination, the trial court remarked: 'I think the doctor has given a very fair and unbiased statement of the condition he found this patient in.' This remark was manifestly erroneous, and plainly prejudicial."

In *Bruggeman v. Illinois Cent. R. Co.*, 147 Iowa 187, the court, in sustaining an objection to a hypothetical question propounded, made the remark that the evidence did not show a certain fact. In passing upon the question, we said:

"There was sufficient testimony in the record to justify the hypothetical question, and the trial court was in error in making the ruling, and more especially in remarking before the jury that the testimony did not show certain of the assumed facts."

See, also, *State v. Stowell*, 60 Iowa 535.

We have no aid from the State, by way of brief and argument, relative to this proposition. It is our conclusion that the making of the aforesaid remark was prejudicial error on the part of the trial court, and because of said error, the judgment is hereby reversed, and the cause remanded.—*Reversed and remanded.*

STEVENS, C. J., and EVANS, FAVILLE, DE GRAFF, and ALBERT, JJ., concur.

MORLING and KINDIG, JJ., dissent.