STATE OF IOWA, Appellee, v. ALBERT SEDIG, Appellant.

No. 46503.

NOVEMBER 14, 1944.

REHEARING DENIED JANUARY 13, 1945.

Marjorie Welch, William P. Welch, and Roy E. Havens, all of Logan, for appellant.

John M. Rankin, Attorney General, and Wm. F. McFarlin, Assistant Attorney General, for appellee.

GARFIELD, J.— ▮ It is admitted that defendant shot Argo Olson with a .22-caliber rifle late in the afternoon of October 1, 1943. Death followed within about an hour. Defendant, who is the only living witness to the shooting, claims he shot in self-defense and that the evidence is insufficient to prove the killing was not justifiable. In Iowa the rule is that the State must prove beyond a reasonable doubt that accused did not act in' self-defense. State v. Twine, 211 Iowa 450, 460, 233 N. W. 476; State v. Burzette, 208 Iowa 818, 828, 222 N. W. 394; State v. Partipilo, 139 Iowa 474, 116 N. W. 1049.

▮ Defendant is a farmer for whom decedent worked. They were of about the same weight but defendant was taller than Olson. On the morning of September 30, 1943, the two drove from defendant's farm to the town of Whiting, where Olson lived, to have a plow shaft straightened. They spent the afternoon drinking beer in a tavern. About 8 o'clock the fol-

lowing morning defendant returned to Whiting, from his farm seven miles distant, to get Olson. The two spent the day drinking beer in taverns. Olson also drank some whisky in the afternoon. A witness for defendant, who drank beer with them for several hours, testifies that both defendant and Olson were intoxicated when the witness left them at 3:30.

A little before 5 o'clock defendant, with Olson driving, left Whiting in defendant's car for his farm. After they had driven three to four miles Olson stopped the car and put together a rifle that was lying in the back of the automobile, saying, "I am going to get a bird [meaning a pheasant] before I get home." Olson then put the butt of the rifle on the floor of the car with the barrel resting between him and his employer, and they continued their journey. Defendant testifies that Olson had been taking the rifle on the tractor when he plowed so he could shoot game and that Olson put the rifle in the car the day before when they started for Whiting with the bent plow shaft.

They drove five miles west of Whiting to the end of the road, then north a half mile to defendant's mail box. After the mail was gotten, instead of continuing on to the Sedig farm, the car was turned around and driven south back to the road into Whiting. Defendant's testimony is that he wanted to go home but Olson insisted on returning to Whiting for more beer. The car was turned east on the Whiting road and brought to a stop about sixty feet east of the corner. This is where the shooting occurred. Defendant's testimony is that just before they turned the corner Olson called him a vile and profane name and repeatedly threatened to kill him. Up to then there had been no quarrel, although defendant says he wanted to get home to do plowing and during the day had been urging Olson to go to the farm but Olson finally said, "To hell with that plowing," and was determined to drink more beer.

When the car was stopped, according to defendant, Olson got out, walked around the car, grabbed defendant by his shirt collar, struck him on the mouth with his fist and pulled him out of the car. Defendant says he pulled Olson to the back end of the car, where Olson struck him again, knocked him down, beat him in the back of his head, rubbed his face in the gravel, and kicked him twice in the side of the body. Olson then said,

according to defendant, "I want to go and get my car and if you have made a move when I come back I will still kill you." Olson's car was at the Sedig farm some two miles from the scene of the affray. Defendant says he got to his feet in a few minutes, thinking Olson had gone, but that he reappeared and beat him again, knocking him to the ground stunned.

Defendant testifies he then got up, went to the side of the car and "opened the car door with the intentions of getting in and getting it started"; while he was feeling on the floor of the car for a saw blade that was used for an ignition key, his hand came against the rifle. About then he says Olson again threatened to kill him; he, defendant, grabbed the rifle; Olson threatened he would get it and kill him; defendant asked Olson several times to stay back but he kept on coming and defendant pumped the gun and fired it eight times until the gun was empty; defendant was backing to the east a step or two each time he fired and Olson was advancing toward him from the northwest. After the eight shots were fired, five of which struck Olson, the latter went south into the cornfield adjoining the road on the south and disappeared; defendant then got in his car, drove some two miles northwest to get his brother and then drove back into Whiting, where he told the mayor he had shot a man and did not know whether he had killed him. The mayor called the sheriff and defendant was placed under arrest.

The State contends there is sufficient circumstantial evidence to prove that defendant did not kill Olson in self-defense. Eight discharged cartridges were found in the road from a point to the west at the extreme south edge of the graveled part of the road to a point about twenty-five feet to the northeast near the north side of the road; a trail of blood was found in the cornfield south of the road from a point slightly west of the west cartridge; this trail led back into the cornfield nearly one hundred feet to a place where several cornstalks had been knocked down; at this spot there was much more blood than at any other spot; from this spot, traces of blood were found for four hundred feet to the northeast leading to the home of a Mrs. Jett, where Olson went, lay on the floor, and died a few minutes after a doctor arrived.

Defendant testifies more than once that all the shots were

fired in a northwesterly direction, that decedent was advancing toward him during the shooting, and that he did not shoot Olson in the back. There is substantial evidence to the contrary; inconsistent with the claim of self-defense.

Two of the five bullets that struck Olson entered his body in the back, one about one and a half inches to the right of the spine, the other about three inches to the left of the spine. A third bullet entered the rear of the left side of the body. A fourth bullet pierced the left hand, causing only a superficial wound. The fifth bullet entered the right upper arm and lodged in the bone. No bullets entered the front of Olson's body. The location of these entrance wounds definitely appears not only from the testimony of the coroner but from several photographs of the dead man's body. The testimony of the coroner, a physician, is that either of the two shots in the back very likely caused death. The location of the wounds in the back is evidence that Olson was moving away from defendant, his back turned toward him, when those shots were fired.

Forty-two feet south of the road, in the tenth row of corn, a cornstalk was found with a freshly made hole from a .22-caliber bullet which had entered from the north four feet three inches above the ground. This cornstalk, which was received as an exhibit, was between the cartridges in the road and the place in the cornfield where there was most blood. This is mute testimony that defendant fired to the south while Olson was attempting to retreat through the cornfield, and not, as claimed by defendant, while Olson was advancing toward defendant from the northwest.

There is testimony that when the sheriff arrived in Whiting at the mayor's place of business following the shooting, defendant said he was "in a hell of a mess" and upon being told by the sheriff that he had killed a man responded, "What would you do if a fellow rubbed your nose in the ground?"

Defendant testifies that he did not strike decedent at any time. The funeral director testifies, however, there were bruises on decedent's forehead, the side of his face and cheek, and there were no bruises or abrasions on his hands or knuckles. A photograph of decedent's body shows bruises on his face.

Defendant testifies that when he and Olson arrived at the

mail box, shortly before the affray, Olson was driving and turned the car around while defendant got out to get his mail. A neighbor lady, however, apparently disinterested, says she saw them at the time, that Olson got out of the car and went to the mail box, and that defendant was driving the car when it was turned around and headed south toward the scene of the shooting.

I. There are four recognized elements of self-defense in justification for a homicide: (1) The slayer must not be the aggressor in provoking or continuing the difficulty that results in the killing. (2) As a general rule he must retreat as far as he reasonably and safely can before taking his adversary's life. (3) He must actually and honestly believe he is in imminent danger of death, great bodily harm, or some felony, and that it is necessary to kill in order to save himself therefrom. (4) He must have reasonable grounds for such belief. State v. Johnson, 223 Iowa 962, 967, 274 N. W. 41; 40 C. J. S. 983, 984, section 114; 26 Am. Jur. 241, 242, section 126. We think the evidence presents a jury question on the existence of at least some of these elements, that the issue of self-defense was for the jury and that we should not interfere.

The jury was not bound to believe defendant's testimony. In weighing it, the jury could properly consider his interest in the outcome of the trial and the fact he is the only living witness to the shooting. State v. Twine, 211 Iowa 450, 460, 233 N. W. 476; 41 C. J. S. 51, 54, section 326. Necessarily, the only means of refuting this defendant's testimony as to the shooting is by circumstantial evidence. The State was not required to prove by direct evidence that the killing was not in self-defense. State v. Burzette, 208 Iowa 818, 828, 222 N. W. 394.

It is apparent that some of the evidence heretofore related is utterly inconsistent with defendant's version. In addition to the above matters, the evidence shows that Olson did not have the rifle or other weapon in his possession at any time during the affray. This is important on the issue of self-defense. The jury could have found from defendant's own testimony that if he had not gone to his car at the time he got the rifle, Olson would probably have left the scene of the fight and gone to get his own car. Thus any danger to defendant would have

been removed and the taking of Olson's life would have been unnecessary. Also a finding would be justified that defendant did not make reasonable effort to retreat or run away from decedent; that when defendant got the gun Olson, unarmed, was forty to fifty feet away; yet defendant made no attempt to run into the cornfield or otherwise avoid decedent. The fact that defendant fired eight shots, five of which struck Olson, also tends to show that defendant was not acting in self-defense. 41 C. J. S. 51, 53, 54, section 326.

It may be that the evidence would be insufficient to sustain a conviction of murder, in which malice is a necessary element. But manslaughter is the unlawful killing of another without malice and may be committed in a sudden heat of passion due to adequate provocation. State v. Boston, 233 Iowa 1249, 1255, 11 N. W. 2d 407, 410, and citations. Under somewhat similar circumstances, we held a finding of murder would not be warranted but that the evidence was sufficient to make a case of manslaughter. State v. Borwick, 193 Iowa 639, 643, 187 N. W. 460. A like holding, under different facts, is State v. Wilson, 234 Iowa 60, 11 N. W. 2d 737. In addition to State v. Borwick, these cases tend to support our conclusion: State v. Johnson, 223 Iowa 962, 274 N. W. 41; State v. Twine, 211 Iowa 450, 460, 233 N. W. 476; State v. Clay, 202 Iowa 722, 210 N. W. 904; State v. Christ, 189 Iowa 474, 482, 177 N. W. 54; State v. Towne, 180 Iowa 339, 160 N. W. 10.

II. The defense contends it was unduly limited in cross-examining the State's witnesses, Mayor Hale and Sheriff Peterson. On direct examination each witness testified to what defendant said in his presence shortly after the shooting. Hale testified that defendant said he had shot a man and Peterson testified that defendant said he was in "a hell of a mess." The court refused to permit defendant to show on cross-examination of either witness that defendant's face was bloody and bruised at the time.

The trial court has considerable discretion in determining the scope and extent of cross-examination. Koonts v. Farmers Mut. Ins. Assn., 235 Iowa 87, 16 N. W. 2d 20; State v. Grimm, 206 Iowa 1178, 1180, 221 N. W. 804; State v. Thomas, 151 Iowa 572, 575, 132 N. W. 51. It is true that ordinarily rather a wide,

latitude is permitted the cross-examiner. Here neither Hale nor Peterson testified on direct examination regarding defendant's appearance and these rulings present no abuse of discretion. State v. Coleman, 226 Iowa 968, 974, 285 N. W. 269; State v. Russo, 193 Iowa 992, 996, 188 N. W. 660; State v. Knight, 182 Iowa 593, 598, 165 N. W. 1039.

Further, the rulings were without substantial prejudice to defendant since the facts sought to be elicited were clearly shown by other witnesses, including the deputy sheriff, and by several enlarged photographs showing the bruises on defendant's face. State v. Johnston, 221 Iowa 933, 940, 267 N. W. 698; State v. Troy, 206 Iowa 859, 869, 220 N. W. 95, 221 N. W. 370; State v. Schumann, 187 Iowa 1212, 1219, 175 N. W. 75.

III. Defendant complains that the cornstalk with the bullet hole in it, heretofore referred to, was received in evidence over his objection that it was immaterial and irrelevant and there was insufficient foundation for its admission. It is argued there is no evidence that the hole in the stalk was made by a shot fired by defendant nor that the bullet struck Olson or caused his death and that the exhibit was too conjectural and speculative to be received. We think the ruling was proper.

As stated, the shooting occurred in late afternoon. The cornstalk was observed the following day by four witnesses. The farmer who owned the cornfield saw it between 7:30 and 8 in the morning. The place in the field where the cornstalk was and the stalk itself were photographed that day. The photographs and the stalk itself are before us. The evidence is that the hole was "freshly made" by a .22-caliber bullet, the same caliber used in the shooting. As stated, the hole was four feet three inches above the ground and the bullet had entered from the north. The stalk was in a line from the discharged cartridges in the road to the bloodiest place in the cornfield.

Circumstantial evidence is admissible where it leads to a reasonable inference and not a mere suspicion of the existence of the fact sought to be proven. The trial court usually has considerable discretion in ruling on the admissibility of circumstantial evidence. A wide latitude is generally allowed in admitting it where direct evidence is lacking to establish a party's theory. 22 C. J. S. 928, section 604; 20 Am. Jur. 260, 261,

section 273; 26 Am. Jur. 365, 366, section 312; Smith v. Pine, 234 Iowa 256, 265, 12 N. W. 2d 236, 242, and citations.

IV. Defendant's remaining complaint is that the court on its own motion should have instructed the jury that the State relied on circumstantial evidence to show that the killing was not in self-defense and also given the jury the rules governing such evidence. The defendant requested no such instruction. While the court might well have given such an instruction, the law is clearly contrary to defendant's contention.

In a number of states it is held that where the evidence of guilt is wholly circumstantial, the court on its own motion must so state to the jury and instruct on the probative value of circumstantial evidence. 26 Am. Jur. 520, section 524; 23 C. J. S. 949, 952, 953, section 1325e; State v. Baird, 288 Mo. 62, 231 S. W. 625, 15 A. L. R. 1035, 1038; Gardner v. State, 27 Wyo. 316, 196 P. 750, 15 A. L. R. 1040, and annotation 1049. However, in several jurisdictions the rule prevails that the trial court in a criminal case in the absence of a request is never bound to instruct as to the weight of circumstantial evidence. 26 Am. Jur. 520, 521, section 524; 23 C. J. S. 949, 953, section 1325e; annotation 15 A. L. R. 1049, 1059. We so held in State v. Bartlett, 128 Iowa 518, 521, 105 N. W. 59, where the evidence of guilt was wholly circumstantial, although it was recognized as the better practice to give such an instruction without request in all cases depending wholly upon circumstantial evidence. State v. Bartlett is cited with approval in State v. Sloan, 149 Iowa 469, 474, 128 N. W. 842. In State v. Blydenburg, 135 Iowa 264, 279, 112 N. W. 634, 14 Ann. Cas. 443, cited by defendant, the state's evidence was wholly circumstantial *and defendant requested an instruction on the subject.*

Here the evidence of guilt is not wholly circumstantial. The killing is practically admitted. The only element of the State's case that rests on circumstantial evidence is that the killing was not in self-defense. There is little if any authority to be found and certainly no decision of this court holding that under such circumstances the court must on its own motion give such an instruction as defendant contends should have been given.

Squarely in point on the question here presented is State v. Baird, 288 Mo. 62, 231 S. W. 625, 15 A. L. R. 1035, 1038. Also sustaining our conclusion that failure to give such an instruction here is not reversible error are: State v. Hart, 140 Iowa 456, 459, 118 N. W. 784; State v. Sloan, 149 Iowa 469, 474, 128 N. W. 842 (closely in point); State v. Dillard, 205 Iowa 430, 216 N. W. 610; State v. Shearer, 206 Iowa 397, 401, 402, 220 N. W. 13; annotation 15 A. L. R. 1049, 1053; 23 C. J. S. 949, 952, 953, section 1325e; 26 Am. Jur. 520, 521, section 524, where it is said:

"Such an instruction is not necessary where the accused admits the killing, and the only questions for the jury to determine from circumstances are who was the aggressor, and whether there was justification for the act * * *."

The judgment is—Affirmed.

All JUSTICES concur.