**STATE of Iowa, Appellee,**

v.

**Richard STAMPER, Appellant.**

**No. 53835.**

Supreme Court of Iowa.

Feb. 25, 1972.

Jesse, LeTourneau & Johnston, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Richard N. Winders, Asst. Atty. Gen., Ray A. Fenton, County Atty., and James D. McKeon, Asst. County Atty., for appellee.

MOORE, Chief Justice.

Defendant, Richard Stamper, appeals from his conviction and sentence for manslaughter. He was convicted of child abuse causing the death of his stepson, Peder Nielsen, age 2. His sole contention here is the evidence is insufficient to support his conviction. We affirm.

■ I.   Serious dispute regarding the applicable legal principles is not developed by the briefs and arguments. On the issue of insufficiency the evidence and all reasonable inferences therefrom are considered in the light most favorable to the State. If there is substantial evidence reasonably tending to support the charge the issues should be submitted to the jury. It is necessary to consider only the evidence which tends to support the verdict. However, the State must prove all the essential elements of the crime charged and any evidence, circumstantial or direct, must be sufficient to raise a fair inference of guilt. It must do more than raise a suspicion, speculation or conjecture. State v. Williams, Iowa, 1970, 179 N.W.2d 756, 758; State v. Link, Iowa, 1969, 171 N.W.2d 259, 260, 261, and citations.

■ Either direct or circumstantial evidence, or both, on each and every essential element to conviction is sufficient to warrant a finding of guilt if it satisfies the jury beyond a reasonable doubt. Circumstantial evidence may be equal in value to and sometimes more reliable than direct evidence. However, where circumstantial evidence alone is relied on as to any one or more of the essential elements the circumstance or circumstances must be entirely consistent with defendant's guilt and wholly inconsistent with any rational hypothesis of defendant's innocence and so convincing as to exclude a reasonable doubt that defendant was guilty of the offense charged. State v. Kittelson, Iowa, 164 N.W.2d 157, 162; State v. DeRaad, Iowa, 164 N.W.2d 108, 110, and citations.

II.   The evidence must be stated in some detail. On and prior to March 29, 1968 defendant lived as husband and wife with Priscilla Pearl Nielsen at 4401 70th Street, Urbandale, just west of Des Moines. Peder Brian Nielsen, his sister and Priscilla's mother also lived there. The grandmother lived in separate quarters, a remodeled attached garage. In the late afternoon of March 29, 1968, defendant telephoned the Urbandale police for the emergency ambulance. On arrival at the home the crew was met at the breezeway door by defendant and immediately went to the kitchen. They there found Peder on the floor, unconscious with blood coming from his nose and mouth. They observed bruises on Peder's forehead, arms and legs. Defendant had been alone with Peder that afternoon. He made no statement to the crew regarding what had happened to the child. There was no bed, davenport or couch in the kitchen area. Peder was taken to Broadlawns Hospital. Defendant went to Priscilla's place of employment and they went to the hospital where they talked to Virginia Anderson, Director of Admissions. The three had talked at the hospital four days earlier, Monday, March 25, when Peder was at the emergency room in a beaten condition. At that time defendant and Priscilla stated the child had been mistreated by his natural father.

On March 29, Mrs. Anderson observed Peder was in much worse condition and hardly breathing. Regarding her conversation with defendant and Priscilla, Mrs. Anderson testified: "Well I was so perturbed over the baby's condition that I said to them, 'What is supposed to have happened to the child now?' And Mr. Stamper jumped up off of the davenport where he was sitting and said, 'Are you insinuating that I was mistreating the child?' I said, 'I'm not insinuating anything, but I don't see how a child could get hurt this badly.' He said, 'He was standing up on the davenport and I yelled "Peder, get down," and he fell off the davenport.' I said, 'I'm sorry, but I don't believe a child could be hurt this badly.'" She immediately reported the matter to the police and juvenile authorities.

Dr. Robert Kollmorgan first saw Peder in the hospital emergency room and with other doctors participated in Peder's surgery and treatment until the child expired that evening. Surgery disclosed an acute subdural hematoma, a blood clot under one of the surfaces or coverings of the brain. It is caused by a massive trauma or severe injury to the head. Dr. Kollmorgan testified such an injury produces symptoms immediately and that he would not expect any lucid intervals thereafter. Defendant's cross-examination had indicated a contention the earlier beating had caused the condition found on March 29.

Dr. Kollmorgan's testimony includes:

"Q. Doctor, on the basis of what you have testified to so far, assume that history indicated that this child fell off a normal davenport, height from sixteen to eighteen inches. Would it be likely that such an injury as you have described would result from such a fall? A. It would be very unlikely in my opinion.

"Q. Now is the key word very unlikely? A. Is the key word?

"Q. Very? A. I could say that I have never known or experienced an injury from such a fall before in my experience."

Dr. Robert C. Jones, specialist in neurological surgery, testified the very large clot found on the left of Peder's head probably had not been there over twenty-four hours. He found no mixture of blood clotting from any earlier injury.

Dr. Tom Wilson, a Broadlawns Hospital doctor, testified he first saw Peder on Monday, March 25, 1968 and he was then covered with bruises. On March 29 Dr. Wilson observed Peder had more bruises, was unconscious and stiff. Defendant and Priscilla told Dr. Wilson Peder had fallen off the end of a couch. He opined such an injury would not be likely to result from a fall off a couch.

Dr. Richard Wooters, Deputy Medical Examiner, saw Peder after he had died. He testified the bruises were far and away more prominent than one would expect to find even on a youngster who took a lot of tumbles. To him it appeared the child had been abused. He opined the fatality was due to a single injury and he could not conceive of such an injury occurring from a fall from a couch.

Dr. Leo D. Luka, Polk County Medical Examiner, did a postmortem on the body of Peder Nielsen and determined the cause of death was subdural hemorrhage. He opined the cause of death would not be likely to result from a fall from a normal couch.

On March 30 defendant told police sergeant Danny Corsbie Peder fell backwards off his grandmother's bed.

On April 5, 1968 defendant told police chief Wayne E. Woods he yelled at Peder and then he fell off the davenport and injured himself.

Priscilla, the only witness for the defense, testified Peder appeared normal the morning and early afternoon of March 29th.

■ III. The main thrust of defendant's argument is the evidence is insufficient to establish corpus delicti. We do not agree. Corpus delicti is made up of two elements: (1) a result has been produced, such as the killing of a human being, and

(2) some one is criminally responsible for the result. Corpus delicti may be established by circumstantial evidence. State v. Whisler, 231 Iowa 1216, 1219, 1220, 3 N.W. 2d 525, 527; State v. Cristani, 192 Iowa 615, 617, 185 N.W. 111, 112; State v. Millmeier, 102 Iowa 692, 698, 72 N.W. 275, 277.

IV. The unlawful killing of another without malice is manslaughter. State v. Drosos, 253 Iowa 1152, 1164, 114 N.W.2d 526, 533; State v. Sedig, 235 Iowa 609, 615, 16 N.W.2d 247, 251; State v. Johnson, 211 Iowa 874, 879, 234 N.W. 263, 266; 40 C.J.S. Homicide § 35, page 896. Under somewhat similar circumstances we affirmed a manslaughter conviction due to child abuse in State v. Tornquist, 254 Iowa 1135, 120 N.W. 2d 483.

V. With the applicable legal principles in mind, we have carefully studied the printed record and the trial transcript. We conclude the direct and circumstantial evidence and the reasonable inferences that could be drawn therefrom support the submission of this case to the jury and its verdict.

Affirmed.

All Justices concur except HARRIS, J., who takes no part.