CASE 5—INDICTMENT—OCTOBER 12.

# Cockrill v. Commonwealth.

APPEAL FROM ESTILL CIRCUIT COURT.

1. INSTRUCTIONS AS TO SELF-DEFENSE.—Upon the trial of appellant for murder the court erred in instructing the jury that they might acquit "if they believed from the evidence that at the time he did the shooting (if he did do it) he was in immediate danger of death or great bodily harm then about to be inflicted on him, or which reasonably appeared to him about to be inflicted on him, by deceased, and from which he had no other safe, or to him apparently safe, means of escape." This instruction required the jury to believe the danger to have been real before they could acquit, without regard to the defendant's reasonable belief as to the existence of the danger.

2. SAME.—The defendant, who had been summoned to aid a deputy sheriff in arresting an offender, having been driven from the ground at the point of a knife by the deceased, who was a friend of the resisting prisoner, had the right to return, and having done so, it was error for the court to instruct the jury that it was his duty to escape impending danger by flight. And it was also error, under the circumstances, to give an instruction denying defendant the right to act in his self-defense if he voluntarily returned and renewed the difficulty, unless after such return he abandoned said difficulty in good faith before the shooting of deceased.

3. SAME.—Even if an instruction based upon defendant's return and renewal of the difficulty was authorized, it was error to require the jury to believe, "beyond a reasonable doubt," that defendant had abandoned the difficulty, as this was to require him to establish his innocence beyond a reasonable doubt.

4. SAME.—An instruction denying a defendant the right to act in his self-defense if he had "other safe, or to him apparently safe, means of escape," is objectionable, for the reason that it might be construed to mean that the defendant must seek to escape by means not absolutely safe, but merely apparently so.

GEORGE DENNY, JR., ROBERT RIDDELL AND JOHN BENNETT FOR APPELLANT.

1. Instruction 3 is erroneous in that it excludes entirely from the consideration of the jury what appellant might have believed as to the danger or the reasonableness of that belief, and also in that it requires the jury, in order to acquit on the ground of self-defense, to believe that there was "no other safe, or apparently safe, means of escape."

2. Instruction 4 seems to assume that if appellant returned and renewed the difficulty, he is cut off from all right of self-defense, even if the deceased used more force than was necessary in repelling appellant's assault. This is not the law. (Terrell v. Commonwealth, 13 Bush, 246; 2 Bishop's Crim. Law, sec. 571.)

    No such instruction should have been given, but even if some instruction embodying that idea was proper, the verbiage of the one given was misleading.

WM. J. HENDRICK, ATTORNEY-GENERAL, FOR APPELLEE.

The instructions state clearly the law of self-defense as applicable to the facts of this case. (Terrell v. Commonwealth, 13 Bush, 246; Holliday v. Commonwealth, 11 Bush, 350; Luby v. Commonwealth, 12 Bush, 7; Phillips v. Commonwealth, 2 Duv., 328; Bohannon v. Commonwealth, 8 Bush, 482,)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

Upon his fourth trial under an indictment for the murder of James Amerine in Estill county, in November, 1887, the appellant was found guilty of manslaughter, and sentenced to confinement in the penitentiary for the term of four years.

He insists that his conviction was at last secured by reason of the misinstruction of the jury by the trial court, the misconduct of the prosecuting attorney in his speech to the jury, and the misconduct of certain members of the jury during the trial.

Stated briefly, the Commonwealth's proof established that after a hasty controversy with the deceased in the court-house yard in the town of Irvine, the appellant rapidly left the yard, and procuring a gun from a neighboring house came back hurriedly, approached his antagonist, and, after deliberate aim, fired the fatal shot. The facts and circumstances attending the killing, and relied on by the appellant as showing the homicide to have been excusable, and as establishing a case of self-defense on

his part, are about these: It was county court. day, and late in the evening a row was in progress in a saloon. The deputy sheriff was sent for to quell the disturbance. He succeeded in arresting one Puckett, who was drunk and disorderly, and while attempting to take him to jail was resisted and assailed by a large number of the excited and drunken friends of the prisoner. Among these latter the deceased, Amerine, was one of the most active and unruly. He swore that Puckett should not be taken; he cut at the deputy with a knife, which he flourished in his hand from the inception of the trouble until he was killed.

The deputy was sorely pressed, and summoned as his aids in suppressing the mob and in landing the prisoner in jail the appellant Cockrill, Butterworth and, perhaps, others. The officers with the prisoner and the crowd had surged across the street and into the court-house yard. The deputy was thrown to the ground, and his nephew, young Park, a lad of some sixteen years, was pushing through the mass of yelling men toward his uncle, when he was roughly accosted by the deceased, knife in hand; and while the boy was crying, the appellant, seeing his danger, said to Amerine, "Don't hurt him," or "Jim, don't hurt him, he is nothing but a boy."

The deceased turned upon the appellant, saying, "What in the hell have you got to do with it?" And when assured that no offense was intended, he advanced on the appellant, who backed away, protesting all the time that he had nothing against him, until, reaching the yard gate, he sprang through it, followed by the angry and insulting words of his assailant. Amerine then proceeded toward the front of the court-house, and flourishing his

knife, said, " he would sink that in him." Cockrill pro-
cured a gun, walked up the pavement toward the still
struggling, resisting crowd and Amerine. He stops, lev-
els his gun at Amerine, taking deliberate aim; there is
nothing in the way of the expected shot. Suddenly he
voluntarily takes down his gun, lowering the breech and
extending the muzzle upward; the expected report is
not heard, and the trouble between them is supposed to
be over. But Richardson and Wilson, having seen the
appellant's hurried return with the gun and his approach
toward Amerine, rush on him, and when they reach him,
seize him and hold him and his gun " as in a vise." Am-
erine, who was only a few steps away, seeing the situa-
tion of the appellant, stooped forward, and with his left
hand extended as if to grab the muzzle of the gun, and
with his right hand grasping the open knife, made at the
appellant. The latter seeing his danger, with an extraor-
dinary effort pressed down the gun and fired from his
hip, calling on the persons holding him not to let the
deceased cut him. This is the defendant's side of the
case, and there is much proof to sustain this account of it.
On the important point that the appellant was summoned
as an aid to the deputy sheriff, there is no contradiction.
The court gave the usual instructions on the subject
of murder and manslaughter.

By a third instruction the jury were told that they
might acquit the defendant "if they believed from the
evidence that at the time he did the shooting (if he did
do it) he, defendant, *was in immediate danger of death or
great bodily harm* then about to be inflicted on him, or
which reasonably appeared to him about to be inflicted

upon him, by said Amerine, *and from which he had no other safe, or to him apparently safe, means of escape."*

Here the right of the defendant to strike in defense of his life or person is made to depend not on his own reasonable belief that he was in immediate danger of death or great bodily harm, but on the belief of the jury that such danger actually existed. It is true that the immediate infliction of the danger need only to have been reasonably apparent to the defendant, nevertheless, the jury, under this instruction, must believe the danger to have been *real* before they could acquit. This instruction has often been condemned as highly prejudicial to the substantial rights of persons charged with homicide and who seek to excuse the act—and the law does excuse it—upon the ground that the danger was *apparent* and not necessarily real. Moreover, notwithstanding that the danger must be so established to the satisfaction of the jury, as in fact *existing*, and as being about to be inflicted on him, yet he may not still act if perchance he may seek some other safe, or to him *apparently* safe, means of escape.

Does this mean that the defendant must seek to escape by means not absolutely safe, but merely *apparently* so? The language is easily susceptible of this construction. But, upon broader grounds, the requirement of the instruction that the defendant must seek safety, flight or means other than by defending himself from the impending danger, and that, too, by such active and aggressive resistance as may appear sufficient to safely protect himself from the attack made on him, must be condemned. Assuming the case as made out for the defendant by the proof, and we must so assume in fitting or applying the

Cockrill v. Commonwealth.

law of self-defense to the particular facts shown in support of his proffered excuse for the homicide, he was upon the ground as an appointed aid to the deputy sheriff. When driven off the grounds at the point of the knife by the unruly assistant of the resisting prisoner, to arrest and imprison whom he was summoned by the officer, shall the defendant fail or refuse to return, or, returning, shall he be required to escape impending danger by flight? Not even the rigid requirements of the common law would demand this of him.

The fourth instruction was as follows : "If the jury believe from the evidence beyond a reasonable doubt that the defendant, after engaging in the difficulty in which Amerine was killed, left the place of said difficulty, and that afterward, at a time when he was in no danger and away from said Amerine, he voluntarily returned to the place where Amerine was, and of his own volition and choice renewed said difficulty with deceased, then, and in that event, he can not rely upon the law of self-defense and apparent necessity, unless after such return he abandoned said difficulty in good faith before the shooting of Amerine."

For the reasons already indicated explanatory of the right of the defendant to return to the grounds from which he had been driven, it is obvious that that leaving and returning should not form the basis of an instruction depriving him of the right of self-defense. But if the defendant had not been summoned to aid the deputy, the instruction is erroneous.

There are three things charged, the doing of which by the defendant are made the basis of a denial to him of the

right to defend himself, and one upon which that right is regained.

First, that he *left* the difficulty; second, that he *returned* to it; third, that he *renewed* it; and fourth, that he *abandoned* it. Now, all four of these propositions are preceded by the requirement of a belief on the part of the jury *beyond a reasonable doubt*. The first three are facts material and necessary to constitute the guilt of the defendant. The last one is a condition upon which he may establish his innocence. And to require the jury to believe it as indicated in the instruction is to require the defendant to establish his innocence beyond a reasonable doubt.

Upon the whole, we do not know of a case in which the usual instructions as to murder, manslaughter and unrestricted self-defense could more appropriately be applied as the whole law of the case, with perhaps an additional instruction on the duty of the defendant to aid the deputy in arresting and imprisoning disorderly persons and remain on the ground for that purpose.

This, however, if given, should be qualified so as not to afford the defendant a cloak to shield any wrong-doing of his own. It is improbable that the minor errors complained of can occur again, and are therefore not noticed.

Let the judgment be reversed and new trial be had according to the principles of this opinion.