Eversole v. Commonwealth.

·

CASE 107—INDICTMENT—MAY 31.

# Eversole v. Commonwealth.

APPEAL FROM CLAY CIRCUIT COURT.

95   623
105   734

95   623
113   805

1. EVIDENCE.—Upon the trial of appellant for murder, the court erred in permitting a witness to testify that some time after the occurrence the accused came to her house, excited and seemingly afraid of being killed, and said he was a shooting man and had killed two men, the fact that the appellant did the shooting not being questioned.

2. INSTRUCTIONS AS TO SELF-DEFENSE.—The court erred in instructing the jury that in order to acquit upon the ground of self-defense, they must believe the killing was necessary, or seemed to defendant in the exercise of a reasonable judgment to be necessary, in order to avert or "escape" the danger, real or apparent. The word "escape" is not proper in such an instruction under any circumstances, and is particularly improper and misleading when used in reference to a person accused of homicide, who is assaulted in his own yard and near to his own dwelling-house, as was the case here. He then may stand his ground, and is not required to flee or "escape."

JAMES EVERSOLE, A. W. BAKER AND H. C. EVERSOLE FOR APPELLANT.

1. The court erred in instructing the jury that it was the duty of appellant, when assaulted in his own home, to "escape" the danger brought on by the deceased. (Wright v. Commonwealth, 85 Ky., 123; Estep v. Commonwealth, 86 Ky., 39; Trimble v. Commonwealth, 78 Ky., 176.)

2. It was error to permit Mrs. Potter to testify that the defendant came to her house at night, that he was excited and said, "Don't let them kill me, I have killed two men." This testimony formed no part of the *res gestœ.* (Greenleaf on Evidence, vol. 1, p. 144, sec. 108.)

WM. J. HENDRICK, ATTORNEY-GENERAL, FOR APPELLEE.

The verdict is not so manifestly against the evidence as to authorize this court to set it aside, and in the absence of any error of law affecting the substantial rights of appellant, the judgment must stand. The court carefully instructed the jury upon the law of manslaughter and self-defense.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Joseph Eversole was indicted for murder of John Herd, but convicted of manslaughter and sentenced to confinement in the penitentiary for twenty-one years.

It appears that Saturday, next before the killing, which occurred on Monday, Herd, accompanied by his wife, a sister of Eversole's wife, went to the house of the latter. Next day, Sunday, the two wives went to a house of religious worship, while the two husbands went to some other place in search of whisky. On their way back they stopped at the church house and met a man named Hacker, who accompanied them to the home of Eversole, the two women having preceded them. After getting dinner the three men went to a place about eight miles distant to get more whisky, and returning about 11 P. M. eat supper and went to bed, Hacker occupying a separate room, there being only two in the dwelling-house, while Eversole and wife and Herd and wife slept in the same room. Where the children slept does not appear.

A short while before daylight Herd commenced quarreling with and threatening his wife so boisterously and violently that she got out of bed and left the house. After Eversole and wife got out of bed the three sat about the fire. Herd still continued threatening his wife, and in

addition maligned her father, who was dead, and spoke
disrespectfully of her mother.   The weather being cold
Eversole's wife carried a blanket to Herd's wife, who re-
mained outside of the house through fear of her husband.
But, finally, assuming he was somewhat pacified, Herd's
wife came back to the house, but he again quarreled with
and drew a poker with purpose to strike her, and was
only prevented by Eversole's wife, who interposed for pro-
tection of her sister.    At the breakfast table Herd
demanded a toddy of whisky be given him, but · upon
failure to get it, again commenced to boisterously threaten
his wife, who was still kept out of the house through
fear of him.    After breakfast Eversole and Hacker left
the house for the purpose, as disclosed by a witness for
the Commonwealth, of "getting away" from Herd.
They, however, returned to Eversole's house, and after
remaining a short time Eversole announced his intention
of going to a place indicated to look after his hogs, and
starting, was followed by Hacker and Herd.   But, after
proceeding a short distance, Eversole concluded to return
to his home, and was again followed by Herd and Hacker.
And after getting into his yard and close to his porch
door the evidence of all those witnesses who were near
enough to see all that occurred, shows Herd, with an open
knife, demanded Eversole's pistol, at the same time spring-
ing toward him, and then Eversole fired three shots
which resulted in his death.

The only cause Herd had, so far as disclosed by the
·evidence, for quarreling with and· threatening his wife,
was that she had hid the whisky, and he finally charged
Eversole with conniving at and aiding her in doing so.
The evidence discloses that Eversole, after breakfas⁺ bor-

rowed from Hacker the pistol with which the fatal wounds were inflicted; but after doing so he went away from his own home in order to avoid a conflict with Herd, and upon his return, finding him still in a quarrelsome mood, again left, evidently for the same purpose. And only after being followed by Herd up to his own door and assaulted with an open knife did he use the pistol.

The verdict in this case, as the record stands, shows the jury were either lacking in intelligence or controlled by passion and prejudice, and it is somewhat surprising the circuit judge would let such a verdict stand. For notwithstanding the deceased had acted like a brute and bully, and accused, according to evidence of those present, after twice leaving his house to avoid a collision, shot him only when assaulted in his own yard and on his way into his own house, the jury fixed his punishment by confinement in the penitentiary for the utmost length of time prescribed by statute in case of manslaughter.

The court erred in admitting the evidence of the witness, Nancy Potter, who testified that some time after the occurrence the accused came to her house, excited and seemingly afraid of being killed, and said he was a shooting man and had killed two men. Such evidence did not tend to illustrate the manner in which the homicide in question was committed, nor the motive of accused for committing it. But was calculated and no doubt did excite prejudice of the jury.

Instruction No. 4 is erroneous and prejudicial. It was proper to tell the jury to acquit the accused, Eversole, if at the time he shot and killed John Herd he believed, and had reasonable grounds to believe, he was then and there in immediate danger of death or the infliction of

great bodily harm at the hands of said Herd.   But it was not proper to add as a further condition the jury should believe the killing was necessary, or seemed to defendant in the exercise of a reasonable judgment to be necessary, in order to avert or *escape* said danger, real, or to the defendant apparent.   The word " escape" is not proper under any circumstances, and it is particularly improper and misleading when used in reference to a person accused of homicide and who is assaulted in his own yard and near to his own dwelling-house.   He there may stand his ground, and is not required to flee or *escape*.   He is, as well upon his own premises as elsewhere, obliged by the law to avoid taking human life when there is no real or apparent danger of then and there losing his own life or suffering great bodily harm at the hands of his assailant, but being at his own dwelling-house, he is not required to *escape*, that is, flee further, in order to do so.

The judgment is reversed for a new trial consistent with this opinion.