STATE OF IOWA, Appellee, v. ETHEL LEBECK, Appellant.

**HOMICIDE:** Duty to ''Escape'' Danger.  An instruction to the effect
   that an accused (in his own home) was justified in taking the life
   of his assailant if to so do was the only way in which he could
   ''*escape*'' having his own life taken, etc., is not equivalent to in-
   structing that the accused was under a legal duty, in his own home,
   ''to retreat'' from his assailant, it being evident that the word
   ''escape'' was used in the sense of ''avoid.''

*Appeal from Shelby District Court.*—E. B. WOODRUFF, Judge.

DECEMBER 11, 1923.

REHEARING DENIED APRIL 4, 1924.

INDICTMENT for murder in the first degree.   The verdict
was, ''Guilty of murder in the second degree.''    From a judg-
ment thereon, the defendant has appealed.—*Affirmed.*

*Shelby Cullison* and *Thomas H. Smith,* for appellant.

*Ben J. Gibson,* Attorney-general, and *Maxwell A. O'Brien,*
Assistant Attorney-general, for appellee.

EVANS, J.—The fact that the defendant committed the
homicide charged is undisputed.    The deceased victim was
George Boken.   The place of the homicide was at the home of
the defendant, and the time, the evening·of September 24, 1922.
The defendant testified as a witness in her own behalf.   She ad-
mitted the shooting of the deceased.   Her only claim of justifica-
tion was that she did it in lawful self-defense.   Her testimony
tended to show that Boken had repeatedly threatened her life,
and that he did on this occasion threaten her life, and that she
believed herself in imminent peril, either of death or of great
bodily harm.   The defendant was a married woman, living with
her husband and three children in her home at a little crossroad
village, where her husband operated a store.   Boken was a

near-by neighbor, and unmarried. He was apparently friendly to both the defendant and her husband, and visited their home frequently. He also visited the home in the absence of the defendant's husband. The defendant testified that he had on one occasion forcibly violated her person, and that he had since that time made repeated assaults upon her. On Sunday evening, September 24th, at about 6 o'clock, he called at the home in company with a young lady, being then on his way to a dance. Both he and the young lady were invited into the house, and were there received cordially. All the defendant's family were present. It was while Boken was upon the back porch of this home, a few minutes later, and while the defendant was upon the ground, and approaching the back porch from a near-by toilet, that the shooting occurred. In view of the admitted circumstances immediately preceding the shooting, the evidence that the defendant acted in lawful self-defense is very slight and very unsatisfactory. The issue, however, was submitted by the court to the jury. Only one error is assigned by appellant as a ground for reversal, and that is that the instructions of the court erroneously put upon the defendant the duty to retreat or to flee from the deceased if she could thereby have safely escaped her peril. The complaint is directed to the closing paragraph of Instruction No. 10, which paragraph was as follows:

"* * * and there was apparently, so far as shown by the evidence, no other way of *escaping* such apparent peril to her life or person except taking the life of said Boken, and if, under such circumstances and to *escape* such imminent peril, she took the life of said Boken, then her action in so doing was justifiable on the ground of self-defense."

The instruction as a whole dealt with the right of self-defense. Complaint is directed to the use of the words "escape" and "escaping," in the paragraph herein quoted. The argument is that the verb "to escape" is equivalent in meaning to the verbs "to retreat" or "to flee," and that the effect of the instruction, therefore, was to say to the jury that the defendant was under duty "to retreat" or "to flee" from her assailant, if she could do so safely, rather than to take his life. It is conceded by the State that the homicide took place at the home of

the defendant, and that she was under no legal duty "to re-treat" or "to flee."

It is to be observed, however, that, though the verb "to escape" may take on the meaning thus contended, it may as properly be used as the equivalent of "to avoid" or "to avert;" and this is the construction for which the State contends. There was nothing in the instruction which in direct terms imposed upon the defendant the duty to flee or to retreat, unless such meaning must be attached to the paragraph above quoted.

The question as herein presented has never heretofore been before us. The appellant relies upon the following authorities from other jurisdictions: *Hammond v. People,* 199 Ill. 173 (64 N. E. 980); *Eversole v. Commonwealth,* 95 Ky. 623 (26 S. W. 816); *State v. McCann,* 16 Wash. 249 (49 Pac. 216).

In the *Hammond* case, the Illinois court criticized an instruction, in that it *"may* have operated to mislead the jury." It did not reverse on such ground, but did reverse on several other grounds. The instruction discussed contained language similar to that complained of in the case at bar. The discussion appears to have been precautionary only, and was as follows:

"A man, if unlawfully assaulted in a place where he has a right to be, and put in danger, real or reasonably apparent, of losing his life or receiving great bodily harm, is not required to endeavor to *escape from his assailant,* but may stand his ground and repel force with force, even to the taking of the life of his assailant, if necessary, or in good reason apparently necessary, for the preservation of his own life, or to protect himself from receiving great bodily harm. (2 Wharton on Criminal Law, Section 1019; *Beard v. United States,* 158 U. S. 550.) The word 'escape,' as a verb, according to Mr. Webster, may mean 'to flee from;' 'to get out of the way of;' 'to hasten away,' etc.; and as a noun, 'the act of fleeing from danger,' etc. It is not necessary to the right of self-defense that the party having otherwise the right to exercise it cannot 'escape' the danger by *fleeing from an assailant."*

The *Eversole* case, from Kentucky, has quite lost its value to the appellant, by reason of a later case from the same court which quite negatives the argument adopted by the appellant.

This is *Frazier v. Commonwealth,* (Ky.) 124 S. W. 797, from which we quote the following discussion:

"But the facts of that case are altogether different from the facts here, and it will be observed that there was in that case another reason for the reversal of the judgment. A similar instruction was condemned in *Cockrill v. Com.,* 95 Ky. 26 (23 S. W. 659, 15 Ky. Law Rep. 328), *Eversole v. Com.,* 95 Ky. 627 (26 S. W. 816, 16 Ky. Law Rep. 143), and in *Arnold v. Com.,* 55 S. W. 894 (21 Ky. Law Rep. 1566). But in all these cases there were other grounds for reversal. It is manifest that, if the word 'escape' had been omitted, and the instruction had read, 'in order to avert said danger, either real or to the defendant apparent,' it would have been beyond criticism. The addition of the word 'escape' could not, under the facts of this case, have affected the result; and, if the word had been omitted, the defendant could not possibly have been benefited in any way."

In *State v. McCann,* 16 Wash. 249 (49 Pac. 216), the language found objectionable was:

"It must appear from the evidence that the defendants not only really and in good faith endeavored to decline any further struggle and to *escape from their assailant* before the fatal shot was fired," etc.

Granting that the verb "to escape" may be used in the double sense, as either "to flee," on the one hand, or "to avoid," on the other hand, does it follow that its use was necessarily or probably misleading? Being capable of use in both senses, the actual sense in which it *is* used in a given case must be determined from its context. This is not ordinarily difficult or doubtful. To speak grammatically, when it is used in the first sense (to flee or retreat), it becomes, like such equivalents, an *intransitive* verb, without an object: to escape *from an assailant.* When it is used in the second sense (to avert or avoid), it becomes, like these equivalents, a *transitive* verb, and has a direct object: to escape *peril.* These respective meanings attach to it naturally, according to its context. In the case before us, this verb was used as a transitive verb, and, therefore, in the sense of "to avert or to avoid." We think, therefore, that the point raised by the appellant that the use of this verb in In-

struction 10 was the equivalent of the use of the verb "to flee" or "to retreat" cannot be sustained.

No other error is assigned. We must assume, therefore, that in all other respects the instructions were correct and complete. The judgment below is, accordingly, affirmed.—*Affirmed.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.