STATE OF IOWA, appellee, v. CHARLES BARATTA, appellant.

No. 47843.

(Reported in 49 N.W.2d 866)

1310

November 13, 1951.

Charles W. Bowers and Ray Rosenberg, both of Des Moines, for appellant.

Robert L. Larson, Attorney General, and Clyde Herring, County Attorney, for appellee.

THOMPSON, J.—Defendant was accused by grand jury indictment of the crime of murder in the first degree. Upon the trial the court withdrew the charge of first-degree murder and submitted to the jury the included offenses of murder in the second degree and manslaughter. A verdict finding defendant guilty of second-degree murder was returned, and judgment

entered accordingly. Defendant, by his appeal, raises several questions of alleged error.

The indictment charges the commission of the offense on the early morning of June 10, 1950. The defendant was the owner and operator of a tavern in the city of Des Moines. The deceased, Wilbur Sandin, entered the tavern between 11 and 12 p.m. on June 9. Presently he became engaged in an altercation with one Carroll Pringle, another patron. About 12:45 a.m., Mrs. Mary Doris Sandin, the wife of deceased, appeared at the tavern, in response to a telephone call from her husband. After she came the argument between Sandin and Pringle was resumed. Sandin invited Pringle to "come on outside and let's continue this." At this point the defendant came to the scene of the controversy and asked what was going on. Sandin told him that "this is between Pringle and me, and I don't want to have any trouble with you." Pringle said that he was telling Sandin that he was "yellow," and Baratta said: "Sure he is yellow. That is why he is wearing glasses." He then said to Sandin: "Take your glasses off. I don't like to hit a man with glasses on." Sandin stood up and took off his glasses and put them in his coat pocket. Baratta then said: "Oh, get the hell out of here. I don't want to be bothered with you. You are still yellow but get the hell out of here." Sandin said: "All right, Baratta. I don't want to have any trouble with you. I will go."

Sandin and his wife then started for the door. After they had gone about eight feet toward the door, Baratta called: "Hey you" or "say." Sandin turned partially around and Baratta struck him in the face or head so that his hat flew off and his glasses were knocked off. Baratta stepped toward Sandin as he struck and hit him with an "upswing." The blow landed on Sandin's face or head. The blow knocked Sandin down, and as he fell to the floor his head struck the south wall of the building. Blood started to come from Sandin's left ear as he lay on the floor. Someone called for an ambulance and Sandin was taken to a hospital where surgery was performed, but he died on June 18 next, apparently from the effects of a blood clot on the brain.

Sandin was thirty-two years of age, six feet tall, weighing between one hundred seventy-five and one hundred eighty pounds, and had been in apparent good health. Baratta was twenty-nine

years old, five feet and five inches tall, and weighed one hundred sixty pounds. Baratta testified that he called the ambulance for Sandin; Mrs. Sandin says it was some other person. After Sandin was taken away, Baratta closed the tavern and, instead of going to his home, spent the night at a downtown hotel. Four Des Moines police detectives testified that defendant's reputation for good moral character was bad. There is evidence that the floor at the point where Sandin fell was slippery from spilled beer and water.

There is also substantial evidence that Sandin, as he turned back after starting for the door, said that there was no one there big enough to throw him out, and to Baratta: "That goes for you too, you Dago bastard." There is also testimony for defendant that Sandin turned and started back toward Baratta with his arm raised as if to strike him. The State's evidence controverted this, but it clearly raised an issue of self-defense which the court recognized and upon which it instructed, as referred to in Division II of this opinion.

I. The first assignment of error goes to the matter of the submission of the offense of murder in the second degree. It is defendant's contention, raised properly by objections, exceptions and motions, that the facts shown did not make a case for the jury on this question. In considering it we must, of course, take the evidence in the light most favorable to the State. Some of the facts set forth above were in dispute, but we must consider them as proven for the purpose of determining whether there is support for the verdict rendered.

It is defendant's thought that there was no sufficient showing of malice to justify a finding of murder. The able trial court properly withdrew the charge of first-degree murder, but was of the opinion that there was sufficient evidence of malice aforethought to require the jury's finding upon the question of second-degree. While the evidence of malice is not overwhelming, we agree with the holding that there was enough.

Defendant's counsel cite, at considerable length, cases from other jurisdictions which hold that malice will not ordinarily be implied from a blow with the bare fist inflicted upon a person of mature years, of comparable size, and in good physical condition. People v. Crenshaw, 298 Ill. 412, 131 N. E. 576, 15 A.L.R.

671; McAndrews v. People, 71 Colo. 542, 208 P. 486, 24 A.L.R. 655; State v. Roush, 95 W. Va. 132, 120 S.E. 304, and other cases are relied upon. But we are not confined to the inference of malice implied from an assault with a deadly weapon. Malice may appear from other evidence. Nor need an intent to kill be shown. In State v. Burris, 198 Iowa 1156, 1158, 198 N.W. 82, 83, we said, quoting with approval from State v. Decklotts, 19 Iowa 447:

" 'A specific intention to kill, to take life, is not essential, at common law, to constitute murder; *nor is it essential, under our statute, to constitute murder in the second degree,* although it is essential to constitute murder in the first degree.'

"This declaration has been adhered to in repeated decisions of this court." (Italics supplied.)

We have recently approved definitions of malice in State v. Rutledge, 243 Iowa ...., 47 N.W.2d 251, 260, which we set out:

" 'Malice means that condition of the mind which prompts one to do a wrongful act intentionally, without legal justification or excuse. It does not mean mere spite, hatred, or ill will, but does signify that state of disposition which shows a heart that is regardless of human life.

" 'Malice as applied to murder in the second degree does not necessarily mean spite or hatred although both of these elements may exist; but it means the doing of an act wrong in itself, without good cause or lawful excuse.' "

See also, for an approved instruction, State v. Hofer, 238 Iowa 820, 833, 28 N.W.2d 475.

In State v. Sayles, 173 Iowa 374, 381, 382, 155 N.W. 837, 839, we affirmed a conviction of murder in the second degree where death resulted from a blow with the fist. The lower court had submitted the charge of murder in the first degree, and much of the Supreme Court's discussion centered around the question of whether there was sufficient evidence to warrant such a ruling. However, we find this language pertinent to the question before us:

"Though death is infrequently caused by a blow from the fist, it does happen sometimes, and from the fact that accused, prior to the killing, threatened death, in coarse language, returned to the quarrel after having departed, and death resulted from a stroke by him on the body, likely to cause serious injury, there was some room for the inference that the taking of life was with malice aforethought, deliberate, premeditated and with the intent to kill."

The facts in the Sayles case, while perhaps somewhat stronger, much resemble those in the case at bar. The defendant in the Sayles case had been angered by an accusation concerning the taking of a bicycle, made against him by the deceased; had accused the deceased of "walking up the street" with his wife, and had threatened to hit deceased so hard that "scavengers would have to come down the next morning to get him." After he had struck deceased, he was knocked down, and held, by deceased's brother; and he then said: "If you let me up, I will clean the whole Runyan family." These things were thought to be sufficient evidence of malice to require submission to the jury.

It is evident that an assault need not be made with a deadly weapon before malice can be inferred. Other things—threats to do bodily harm—may be sufficient. A wrongful act intentionally done, without legal justification or excuse, may support a finding of malice aforethought within the meaning of the statute defining murder in the second degree. Here, the record shows that defendant called deceased "yellow" and invited him to remove his glasses—"I don't like to hit a man with glasses on." While he did not immediately strike him when the glasses were removed, he did so very shortly afterward. These threats and manifestations of ill will distinguish this case from State v. Wilson, 234 Iowa 60, 97, 11 N.W.2d 737. The evidence is conflicting, and at its best does not make a strong showing of malice, but we think the jury was properly permitted to say whether defendant's act was wrongful, without legal justification or excuse, and so to infer malice therefrom, since, as has been pointed out, a specific intent to kill is not necessary.

II. Further error is assigned by the defendant upon the

giving of instructions Nos. 11 and 12. The material part of No. 11 is this:

"You are instructed that the defendant Charles Baratta, being in his place of business, had a right to order Sandin from his tavern, if the said Sandin became quarrelsome or disorderly, and if the defendant ordered Sandin to leave the tavern because Sandin was quarrelsome or disorderly, it was the duty of Sandin to leave peaceably.

"If you find from the evidence that Sandin did not leave the tavern peaceably, after he had been ordered to do so by the defendant, but made an assault on the defendant in the tavern, then the said Baratta had the right to meet force with force, in order to repel an assault by Sandin, if any. And if you find from the evidence beyond a reasonable doubt that Baratta used more force in repelling said assault, if any, than was reasonably necessary under the circumstances as they honestly appeared to the said Baratta, acting as a reasonably prudent man, then he was not acting in self-defense. But if Baratta from his standpoint alone honestly believed as a reasonably prudent person under the circumstances that he was in imminent danger of suffering great bodily injury or death at the hands of Wilbur Sandin, he had the right under the law to kill the said Sandin, if that seemed to be the only means of preventing such injury or death to the said Baratta. However, if you find from the evidence that the defendant Baratta did not use more force than was reasonable under the circumstances, as they honestly appeared to him, even though the blow struck by Baratta caused Sandin's death, then the defendant would have been acting in self-defense and you should acquit him."

Instruction No. 12 is set out in full:

"You are further instructed that to make the taking of a human life justifiable on the grounds of self-defense, there must be actual and urgent danger from the defendant's standpoint. It is not necessary that the danger should in fact exist, but that there be actual and real danger to the defendant's comprehension as a reasonably prudent person under the circumstances. The inquiry is not whether the harm apprehended was actually in-

tended by the assailant, but was actual and real to the accused as a reasonably prudent person under the circumstances, as compared to danger remote or contingent. The defendant is entitled to act upon appearances, and is not required to draw nice calculations from such appearances; but to justify the taking of life there must be such appearance of an impending danger as this appears to the defendant, acting as a reasonably prudent person under the circumstances, to be the only means of preventing the threatened injury or death."

By proper exceptions and by assignments of error, defendant makes the contention that in the first three and the last sentences in the quoted part of instruction No. 11 the court laid down the correct rule governing the claim of self-defense in this case; but that in the sentence immediately preceding the last, and in instruction No. 12, the jury was given a different, contradictory and erroneous rule. We are of the opinion that this complaint has merit.

 We are committed to the rule that a person attacked in his home, or place of business, may meet force with force, even to the extent of taking life if it is necessary or appears to be necessary. The doctrine of "retreat to the wall" in such cases has been expressly repudiated. The question was before the court in State v. Sipes, 202 Iowa 173, 209 N.W. 458, 47 A.L.R. 407. We there held that when the defendant was in his place of business he had the same right as in his home; he was not bound to retreat when attacked, but had the right to meet force with force, to the extent of taking life if need be. The opinion in this case, written by Justice Albert, goes into the question ably and extensively, quoting many authorities.

 It may be urged that in the case at bar the offending instructions or parts of instructions did not tell the jury that it was the duty of the defendant to retreat before using sufficient force to kill his attacker. The challenged part of No. 11 contains the statement that defendant had the right to kill "if that seemed to be the *only means* of preventing such injury or death." (Italics supplied.) Instruction No. 12 closes with the words *"to be the only means of preventing the threatened injury or death."* (Italics supplied.) The duty to retreat is not mentioned in spe-

cific terms; but we think that the average juror, being told that defendant could use force sufficient to kill only if that was the *only means* of preventing his own death or injury, would immediately turn to the thought of retreat as the likeliest "other means." Retreat has always been recognized as the most promising way of promoting one's safety from danger. "He who fights and runs away may live to fight another day" expresses a common opinion. In State v. Sipes, supra, pages 179, 180 of 202 Iowa, we quoted, with approval, from State v. Cushing, 14 Wash. 527, 530, 45 P. 145, 146, 53 Am. St. Rep. 883. The trial court there had given an instruction which said: " 'Before a person can justify taking the life of a human being by self-defense, he must employ all reasonable means within his power, consistent with his own safety, to avert the necessity for the killing.' "

The Washington Supreme Court, in disapproving the instruction, said:

" 'We think that this instruction, in connection with the entire charge, might reasonably have tended to create the impression upon the minds of the jurors that it was the duty of the appellant, notwithstanding that he was upon his own premises, where he had the lawful right to be, to retreat from any assault then being made or threatened by the deceased; * * *.' "

See also State v. Gough, 187 Iowa 363, 367, 368, 174 N.W. 279; State v. Leeper, 199 Iowa 432, 441, 442, 200 N.W. 732, 736.

In the Leeper case, supra, a challenged instruction told the jury that the killing of an assailant was justifiable on the ground of self-defense only when it is, or reasonably appears to be, the *only means* of saving one's life or preventing some great bodily injury; and that, if the danger which appears to be imminent can be avoided in any other way, the taking of the life of the assailant is not excusable. We said: "This clearly puts upon the one assailed the duty to adopt any and every reasonable means of escape, *including retreat*, before taking the life of the assailant." (Italics supplied.) Since the killing took place in the home of one of the defendants, the instruction was held erroneous.

The Leeper case also points out that the defendant had requested an instruction that Mrs. Wertz (one of the defendants),

being in her home, was not bound to retreat, and that it was not given, nor was the applicable law presented to the jury in any of the court's own instructions. Such is the situation here. The defendant's requested instruction No. 1 contained the statement that: "It is the law of this State that when a person, being without fault, and in his own place of business, is assaulted by another, he may, *without retreating*, repel force by force," etc. (Italics supplied.) The instruction asked was not given, nor did the court in any instruction given upon its own motion tell the jury that the defendant was under no duty to retreat. To the contrary, as we have pointed out, it in effect told them in both Nos. 11 and 12 that he had such duty. Defendant properly predicates error upon the refusal of the court to give its requested instruction on this point.

The case of State v. Lebeck, 197 Iowa 973, 196 N.W. 6, is sometimes cited as upholding a doctrine contrary to the one we have announced here. Without attempting to analyze the language of the opinion, we think it sufficient to say that if it does support the instruction given by the trial court in the case at bar, its value to the State is lost by reason of the later cases of State v. Leeper and State v. Sipes, both supra. It is of interest to note that Justice Evans, who wrote the opinion in State v. Lebeck, concurred in the opinions in the later Leeper and Sipes cases.

We think the true rule is that expressed by the trial court in the final sentence of instruction No. 11, in which the jury was told that if Baratta did not use more force than was reasonable under the circumstances, as they honestly appeared to him, even though he struck a blow that caused Sandin's death, he was acting in self-defense. The defendant was in his place of business, and so strictly within the rule discussed in State v. Sipes, supra, giving him the same right of self-defense there as he would have had in his home; and it is immaterial whether or not the attack was made with a deadly weapon. Defendant's right of self-defense is to be measured by the rule of being under no duty to retreat, and of having the right to meet force with force to the extent appearing reasonably necessary for his own protection, even if in so doing he strikes a blow causing death.

■ The State says that the instructions must be read together, and that any inaccuracy in Nos. 11 and 12 is remedied by the first and last parts of No. 11, which give the proper rule. It might have been possible to say, so far as No. 11 is concerned, that the final sentence, which we have referred to above as expressing the true rule, overcomes the error contained in the sentence immediately preceding. But No. 12 is a separate instruction, following No. 11 and laying down a different and, as we think, erroneous principle. We do not see how the jury could have determined which rule to follow. We recognize that instructions must be read as a whole, but the principle has no application here. We have often pointed out that when instructions in the same case are contradictory and opposed we cannot know which the jury followed, and consequently error appears. State v. Glaze, 177 Iowa 457, 460, 461, 159 N.W. 260; Bennett v. City of Marion, 106 Iowa 628, 635, 76 N.W. 844; State v. Hartzell, 58 Iowa 520, 12 N.W. 557.

In connection with the duty to retreat, we are not overlooking our holdings in State v. Sedig, 235 Iowa 609, 614, 16 N.W.2d 247, State v. Johnson, 223 Iowa 962, 967, 274 N.W. 41, and State v. Marish, 198 Iowa 602, 603, 607, 200 N.W. 5. In each of these cases the encounter took place upon a public highway, rather than in the defendant's home or place of business, which furnishes the distinction between them and State v. Sipes, supra, and the case at bar.

III. We think it may also be questioned whether the facts in the instant case required, or indeed permitted, instructions such as the challenged portion of No. 11 and No. 12, which seem to assume that there was evidence not only that the defendant was threatened with great bodily injury or death, but that he had an intent to kill when he struck Sandin. The evidence goes no further than to show that Sandin approached Baratta with his arm raised, in a threatening manner, and that Baratta thereupon struck him with his fist. The correct legal principle applicable to this situation is that expressed by the trial court in the last quoted sentence of instruction No. 11. Perkins on Elements of Police Science, page 391; Hopper v. Dowling, 191 Iowa 57, 181 N.W. 759; State v. Goering, 106 Iowa 636, 77 N.W. 327.

IV. The next assignment deals with claimed errors in instruction No. 8. The jury was thereby told that before it could find defendant guilty of murder in the second degree it must find that defendant struck Sandin, and in so doing was actuated by malice aforethought, and as a result thereof Sandin died. It was repeated that the striking must have been with malice, and resulted in the death of the person struck; and at another point it is said that if defendant struck Sandin, not in self-defense but with malice aforethought, knocking him against the wall and to the floor of the tavern and as a direct result of the blow and the fall Sandin died, defendant would be guilty of murder in the second degree.

The foregoing gives enough of the gist of the instruction to illustrate defendant's complaints. The first error is thought to inhere in that there was no sufficient showing of malice to justify a finding of second-degree murder. We have disposed of this claim in Divison I. Next, defendant contends that the instruction erroneously, at various places, says that it is sufficient if the blow was struck with malice aforethought; while the law requires the killing to be with malice, rather than the striking. The distinction is too finespun for us to follow. At each point where the court spoke of the striking with malice, he followed by the qualification that they must also find that deceased died from the blow. Can it be said that, if a blow is struck with malice and death results therefrom, the killing is not also done with malice? The authorities cited by defendant were decided many years ago, before our short form of indictment statute, now section 773.34, Code of 1950, was enacted, and have to do with the fine technicalities which governed the drawing of true bills at that time. We find no merit in this alleged error.

V. Defendant next says that the court was in error in its definition of manslaughter, given in instruction No. 9. It is conceded that the charge is properly defined so far as it goes, but defendant says it is abstract only and has no relation to the facts in this case. We set out the instruction herewith, so far as material:

"Manslaughter is the unlawful killing of a human being without malice aforethought, express or implied, and it is there-

fore distinguished from murder in the second degree by the absence of malice aforethought, which is an essential element of murder in the second degree."

The defendant did not ask for any more detailed instruction, and in the absence of such a request we think the one given sufficient. Moreover, the jury found defendant guilty of an offense of a higher degree than manslaughter; and while it is not always that it can be said that error, if such there be, in a definition of an offense of a lower grade than the one of which the accused is found guilty is without prejudice, we think it is so here. The jury was clearly, unequivocally and properly told that one important distinction between second-degree murder and manslaughter is in the requirement of malice for the former. It must have found malice present, and so could hardly have returned a verdict of manslaughter. We have often held that, generally, a finding of guilty of a higher offense makes error in defining lower offenses without prejudice. State v. Rutledge, supra; State v. Smith, 215 Iowa 374, 380, 245 N.W. 309; and State v. Grimm, 212 Iowa 1193, 1194, 237 N.W. 451.

VI. In instruction No. 7, in which the jury was advised concerning intent, the court said that all the facts and circumstances shown by the evidence should be considered, "including the relative size and strength of the said Wilbur Sandin and the defendant together with any other evidence which might throw any light on the state of mind of the said defendant Charles Baratta." The complaint here is that the court selected only one specific item of evidence to which to call the attention of the jury, and it is alleged to be error to emphasize part of the evidence to the exclusion of the rest. Defendant did not ask for a more detailed instruction, and the item mentioned in the instruction referred to facts favorable to him. Sandin was actually taller and heavier than the defendant, and there is some evidence that defendant's left arm was crippled. It would be impossible for a court in many cases to cover specifically each and all of the different features of the evidence in such an instruction, and it is not required. There is no question here of overemphasis of evidence favorable to one party.

■■■ VII. The next assignment of error argued is a complaint that the trial court should have given, and did not give, an instruction dealing with an accidental killing. In State v. Hartzell, supra, the defendant contended that he struck the deceased by accident. In State v. Trybom, 195 Iowa 780, 192 N.W. 813, also cited by defendant, where the death occurred from a gunshot wound, it was the contention of the defense that the gun was discharged by accident. State v. Friar, 204 Iowa 414, 214 N.W. 596, also relied upon, fails to support defendant's position. It was held that the claim of accident was sufficiently presented to the jury. There is no evidence in the case at bar which required any reference to a claim of accident. Defendant nowhere claims that he struck the fatal blow accidentally. It was certainly done intentionally, whether as an aggressor as the State claims, or in self-defense as the defense says. The result may have been accidental, but the blow was not.

VIII. Complaint is made of the failure of the court to submit included offenses below manslaughter. Defendant admitted striking the blow. Death having resulted, there was no occasion for submission of the offenses lower than manslaughter. State v. Rutledge, supra, and authorities therein cited.

IX. The final assignment of error is a general charge that the instructions as a whole were misleading, confusing and contradictory and did not fully instruct the jury on the applicable rules of law. We have discussed many of the instructions separately, and have found no prejudicial error except as set forth in Division II. We find no merit in the omnibus charge above referred to.

Because of the error pointed out in Division II the cause is reversed and remanded.—Reversed and remanded.

BLISS, WENNERSTRUM and SMITH, JJ., concur.

HAYS, J., concurs, except in Division I he would hold that there is not sufficient evidence of malice to warrant the submission of the charge of murder in the second degree.

MULRONEY, J., and OLIVER, C. J., and GARFIELD and MANTZ, JJ., dissent.

MULRONEY, J. (dissenting)—The majority bases its reversal

on what it says are contradictory instructions as to the law of self-defense. The majority holds the correct rule is stated in instruction 11 but the court, in a portion of the last sentence of instruction 12, in effect told the jury that it was the duty of defendant to retreat before using sufficient force to kill his attacker. The majority admits "the duty to retreat is not mentioned in specific terms" but the court in instruction 12 told the jury the defendant could use force sufficient to kill "if that was the *only means* of preventing the threatened injury or death" and the majority feels such a statement must have conveyed the thought to the average juror that defendant had the duty to retreat.

Defendant's exceptions to instructions, filed by able and experienced counsel for defendant thirty-six days after return of the verdict, do not object to instructions 11 or 12 on the ground asserted and upheld by the majority opinion. These exceptions are too long to quote here in full. However, the essential part of defendant's exception to instruction 11 is:

"* * * the court told the jury, in substance, that if defendant believed he was in imminent danger of suffering great bodily injury or death at the hands of Sandin, he had the right under the law to kill Sandin, *if that seemed to be the only means of preventing said injury or death to defendant.* This part of the instruction is in conflict with the first part of said paragraph and informs the jury that defendant had to be in imminent danger of suffering great bodily injury or death at the hands of Sandin before he would have the right to kill in self-defense. This does not correctly state the law of the case *because the alleged blow struck by defendant was with the naked fist, and death is not the natural, nor probable, consequence of such blow.*"

The exception to instruction 12 refers back to the exception to No. 11 and continues:

"The court in instruction 12 informs the jury that to justify the taking of a human life on the ground of self-defense, there must be actual and urgent danger from defendant's standpoint as a reasonably prudent person, and that to justify the taking of a human life, *it must be the only means of preventing threatened injury or death.* This is not a correct statement of the law

applicable to this case, *for the reason that the blow alleged to have been struck by defendant was with the naked fist.*"

The first clause italicized by me in each of the above quotations refers to the language of the instruction the majority holds would cause the average juror immediately to think defendant was under the duty to retreat, although evidently the instructions conveyed no such thought to able counsel for defendant. In any event, *the exceptions to instructions 11 and 12 assert no such ground.*

The principal ground of defendant's objection to each of these instructions is stated in the second clause italicized by me in each of the above quotations. While it is true, as the majority opinion says, defendant contended instructions 11 and 12 are contradictory, he specified in the part of the exceptions quoted above wherein he claimed they are contradictory.

We have held over and over we will not consider an objection to instructions not made in the trial court by proper exceptions thereto. Such decisions include State v. Grigsby, 204 Iowa 1133, 216 N.W. 678; State v. Shearer, 206 Iowa 397, 402, 220 N.W. 13; State v. Woodmansee, 212 Iowa 596, 621, 233 N.W. 725; State v. Davis, 230 Iowa 309, 310, 311, 317, 297 N.W. 274, 277 ("And to be considered the exceptions must specifically and definitely point out the error complained of.") ; State v. Dunne, 234 Iowa 1185, 1187, 15 N.W.2d 296; State v. Hofer, 238 Iowa 820, 832, 28 N.W.2d 475, 481.

The objection to the self-defense instructions that the majority finds reversible error is not the same objection that defendant argues in his brief. The defendant sees in prior authorities two rules of self-defense applicable to the situations where defendant uses a deadly weapon and a nondeadly weapon in repelling assaults. This is the statement of his objection: "Instructions No. 11 and No. 12 presented to the jury the rule of self-defense applied to situations where the defendant uses a deadly weapon or force. This was error." I will not pursue the objection defendant makes and this is only mentioned to show that the meaning the majority attaches to instruction 12—that defendant had the duty to retreat—was not readily apparent to defendant's counsel. And I do not feel the two instructions when read to-

gether would convey to the average juror the thought that defendant must retreat. We have so often said instructions should be considered as a whole that citation of authority is unnecessary.

The instructions are set out in Division II of the majority opinion. The majority admits instruction 11 states the correct rule of law. There the jury is told defendant being in his place of business "had the right to meet force with force, in order to repel an assault by Sandin, if any." But defendant must not use more force than "was reasonably necessary under the circumstances as they honestly appeared to [him] acting as a reasonably prudent man." The jury is then told that defendant's belief that he was in imminent danger of suffering injury or death at the hands of Sandin must be judged from defendant's "standpoint alone" and as the circumstances "honestly appeared to him" and he could kill "if that seemed to be the only means of preventing such injury or death."

As the majority holds, this instruction 11 correctly stated the law of self-defense applicable to the case. It starts with the general statement that defendant, because he is in his place of business, can meet force with force. It goes on to tell the extent of force defendant could use. The extent is to be judged from the circumstances from "defendant's standpoint" acting "as a reasonably prudent person under the circumstances" and the force can extend to killing "if that seemed to be the only means of preventing such injury or death." Instruction 12 is merely further explanation and definition of the above terms. They all appear again in instruction 12 and the jury is warned they need not find that danger existed in fact and that the inquiry is not whether the harm actually was intended by the assailant. The jury is told defendant "is not required to draw nice calculations", he could act on "appearance of impending danger" and in effect the jury is told the force he could use to resist force could be the supreme force, to kill, if the appearance of impending danger appeared to defendant, acting as a reasonably prudent person under the circumstances, to be the only means of preventing the threatened injury or death.

I think instruction 12 is correct and not contradictory to instruction 11. The entire instruction deals with the force defendant can use and the necessity that will justify its use.

The words "only means of preventing the threatened injury" appear in both instructions and in each they refer to the supreme necessity that will justify supreme force. As some courts have expressed it: "The right to kill in self-defense begins where the necessity begins and ends where the necessity ends." 40 C.J.S., Homicide, section 115, page 986; People v. Giacalone, 242 Mich. 16, 217 N.W. 758; Wharton on Homicide, Third Ed., 378–382. I feel the jury in the two instructions was told defendant could meet force with force, but to justify the use of supreme force to kill it had to appear to defendant, acting as a reasonably prudent man, that this was the only means that would repel the force Sandin was directing against him. In other words, the circumstances had to show the *necessity* to kill to save defendant from a real or apparent danger. It seems to me the majority puts a strained construction on the language when it says "only means of preventing the threatened injury" means defendant must retreat.

The case of State v. Lebeck, 197 Iowa 973, 974, 196 N.W. 6, is much in point. There the complaint was to an instruction which stated in part: " '* * * and there was apparently, so far as shown by the evidence, no other way of *escaping* such apparent peril to her life. or person except taking the life of said Boken, and if, under such circumstances and to *escape* such imminent peril, she took the life of said Boken, then her action in so doing was justifiable on the ground of self-defense.' "

The specific complaint was that the homicide took place in defendant's home, and the use of the verb "to escape" was equivalent to the verb "to retreat" or "to flee" and defendant being under no duty to retreat the instruction was erroneous. This court, speaking through Justice Evans, conceded that the verb "to escape" could have the meaning "to flee" but as used in the instruction it meant "to avert or to avoid" and, given the latter meaning, it was a correct statement of the law. If a duty to retreat cannot be attached to the words "no other way of averting or avoiding such apparent peril" then surely such a duty to retreat cannot attach to such words as "the only means of preventing the threatened injury or death."

Almost the very words of instruction 12 on which the majority bases the reversal were approved in State v. Norton, 227

Iowa 13; 18, 286 N.W. 476, 479. There instruction 7 told the jury " 'But before one is *justified in taking life* in self-defense, it must be, or it must reasonably appear to be, *the only means of saving one's own life, or of preventing great bodily injury.'* " (Italics supplied.)

· The facts do not appear in the above opinion and the objection asserted was to the phrase "justified in taking life." But in discussing the instruction we said : "The court told the jury the circumstances under which a defendant would be justified in defending himself to the extent of taking the life of his assailant * * *."

We recognized that the phrase "only means" referred to the necessity that would justify the extent of force used. That is what the same phrase means in instruction 11 and in instruction 12 in the instant case. That is the meaning that I feel was conveyed to the average juror. The general statement of the rule given at the outset that defendant pleading self-defense can meet · force with force demands explanation. He cannot meet real or apparent slight force with force sufficient to kill. Force, to the extent of taking life, can be justified when it appears to defendant that is the only means of preventing the threatened injury or death. Since death was the result of defendant's force the court was under a duty to tell the jury the circumstances which would justify defendant's exertion of such force. There may be other ways of stating these · necessary circumstances that must be present. In the Lebeck case, where as here there was no duty to retreat, we in effect placed our stamp of approval on such language as "no other way of *escaping* such apparent peril" or "no other way of *averting* such apparent peril" or "no other way of *avoiding* such apparent peril.". In effect we there held such phrases would not convey to the average juror that the court was saying the defendant had the duty to retreat. Here the majority says "only means of preventing the threatened injury" surely conveyed to the average juror that the court was saying the defendant had the duty to retreat. It does not clearly appear that the phrase conveyed any such thought of duty to retreat to defendant's able counsel. To me it is perfectly apparent that these words · in the two instructions express the necessity that

must be present before force sufficient to kill can be exerted by one pleading self-defense in a homicide case.

I would affirm.

OLIVER, C. J., and GARFIELD and MANTZ, JJ., join in this dissent.